BRADFIELD, ADMR., APPELLANT, *v.* STOP-N-GO FOODS, INC., APPELLEE.

[Cite as Bradfield *v.* Stop-N-Go Foods, Inc. (1985), 17 Ohio St. 3d 58.]

(No. 84-1730—Decided April 3, 1985.)

*Herbert Creech* and *Alvarene N. Owens,* for appellant.
*Young, Pryor, Lynn & Jerardi* and *Michael J. Burdge,* for appellee.

This cause, certified by the court of appeals (case No. 8709), is reversed on authority of *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90.

CELEBREZZE, C.J., SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

LOCHER, J., dissenting. I dissent because, as I noted in my dissent in *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 101-102, double recovery of workers' compensation and intentional tort benefits is untenable in law or logic. A viable alternative might be set off of claims if a basis is presented, after recovery of workers' compensation benefits, for a genuinely intentional tort. Unfortunately the majority has refused to apply the definition of "intentional" in an analytically consistent manner and has rejected all alternatives, such as setoff, to reconcile this problem.

Accordingly, I dissent.

HOLMES, J., dissenting. This case presents a new low in decisional pronouncement of Ohio workers' compensation law and a new high in absurdity of result upon the facts, an absurdity born out of wedlock from the questionable law of *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, and their progeny. Here, a young lady clerk employed in a Stop-N-Go store was fatally stabbed during a robbery while she was on duty for her employer. Based upon this work-related death, the deceased's mother filed a claim for death benefits with the Industrial Commission. Such claim was allowed on the basis that the death was the result of "an injury which was caused by external accidental means or was accidental in character and result sustained in the course of and arising out of employment."

Thereafter, the decedent's father, as administrator of the estate, brought this wrongful death action against the employer on the basis that

the death was the proximate result of the intentional act of the employer. The general thrust of such action was that Janice Bradfield, the employee, was fatally stabbed as a proximate result of the employer's "malicious failure to provide reasonable measures for safety of the decedent, a nineteen year old female, in wilful and wanton disregard of their [*sic*] duty to protect the health and safety of its employees."

First, as I stated in my dissents in *Blankenship, supra,* at 621, and *Jones, supra,* at 103, those decisions allowing double recovery fly directly in the face of the Ohio Constitution. Such decisions violate Sections 26 and 35, Article II, and Sections 1 and 16, Article I, of the Ohio Constitution.

The significant and essential failing of the rationale of the majority holding in *Jones* is that it does not engage in any analysis of the provisions of the Ohio Constitution in order to determine whether its rationale is consistent with the Constitution. Section 35 of Article II clearly and unequivocally states that, whatever statutes may be enacted by the General Assembly in order to create a workers' compensation system, those statutes must provide that when compensation is given to an employee for injuries "occasioned in the course of such workmen's employment," "[s]uch compensation shall be in lieu of all other rights to compensation, or damages, for such * * * injuries * * * and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for such * * * injuries * * *." If Ohio's Workers' Compensation Act permits an employee to recover once under the Act, and again in a common-law action, for the same single injury, then that Act violates the clear provisions of Section 35, Article II of the Ohio Constitution. Certainly, no policy considerations, such as the fairness or unfairness of requiring an election of remedies, whether weighed and considered by a court or a legislature, can operate so as to emasculate the clear and express provisions of the Constitution.

Furthermore, allowing double recovery for a single injury results in a violation of Section 26, Article II, and Sections 1 and 16, Article I, of the Ohio Constitution. It was long ago noted that the sections of Ohio's workers' compensation law "are all parts of the same law. They are all enacted pursuant to the same constitutional authority and must be harmonized and so administered * * * as not to create inequalities; so as not to create rights in favor of one class of persons wholly inconsistent with rights granted to others. * * * [To do otherwise] would raise a serious doubt as to its constitutionality, as not having uniform operation, and therefore in violation of section 26, Art. 2, of the Ohio Constitution." *State, ex rel. Crawford,* v. *Indus. Comm.* (1924), 110 Ohio St. 271, 280.

This court's decision in *Jones, supra,* results in treating one class of persons in a manner wholly inconsistent with rights granted to other classes. For example, an employee injured by the intentional tort of his complying employer might suffer an injury identical to that suffered by another employee injured by the intentional tort of his non-complying

employer. According to *Jones,* the employee of the complying employer can receive one award under the workers' compensation laws and an additional award via a common-law action. However, the employee of the non-complying employer cannot. That is, under R.C. 4123.75 and 4123.77, if the employee recovers against his non-complying employer in a common-law action, he must repay out of that judgment whatever amounts he received from the State Insurance Fund. There is no logical or legally valid reason for such a difference in the treatment of employees who suffer identical injuries. Similarly, there is no logical or legally valid reason for requiring the complying employer to pay twice for such an injury, while requiring the non-complying employer to pay only once. If anything, one would think that the non-complying employer, as a violator of the law, should be required to pay more than the complying employer. It is thus obvious that the opinion in *Jones* creates a situation that encourages employers to simply stop paying into the fund and to become non-complying employers. This will frustrate the very purpose of the Act.

Further, there is no logical or legally valid reason that a complying employer should have to pay twice for an intentional tort, when *any* other tortfeasor, whether or not he is an employer, only has to pay once. This certainly cannot be the General Assembly's intention when it enacted the workers' compensation statutes. If so, then those laws are undoubtedly unconstitutional.

Justice William B. Brown, the author of *Blankenship, supra,* was in agreement with the aforestated position. In his dissent in *Jones,* he stated at 103:

"Even if I were to conclude that there are strong public policy considerations which militate against a finding that an employee, by receiving workers' compensation benefits, waives his right to institute a tort action when his employer's conduct amounts to an intentional tort, I would nonetheless be unable, pursuant to my oath of office, to so hold, for such a position is irreconcilable with the plain language of Section 35, Article II of the Ohio Constitution. * * *"

Here, the decedent's mother submitted a sworn statement to the Industrial Commission to the effect that the deceased was employed by Stop-N-Go at the time of the injury which resulted in her death, and that she was in the course of such employment at the time of the injury. Based upon such statements and a hearing thereon, benefits were paid. She could not have been an employee, and at the same time not have had such employee status.

Additionally, to show the absurdity of the reach of claimants in this area of tort law, one need only look at the facts of this case and the intentional tort claimed by the complainant. Here, the allegations of intentional tort, as elucidated in the record, involve the assertion that the injury and resulting death were fraudulently occasioned by the employer not having in fact maintained a closed circuit television camera on the premises. Accord-

ingly, one hypothesizes that the deceased employee and other employees were maliciously lulled into a false sense of security from harm by being told that the camera was a working television camera, when in fact it was a non-working mock-up of such a camera.

This utter nonsense clearly points to the horizon of counsel's imagination that will be perpetrated on the judicial system of this state, such cases leaning upon the crutch of *Blankenship* and *Jones*. Where will it end? What is next to be considered an "intentional" tort?

I would affirm the judgment of the court of appeals and, in so doing, reverse the legal aberrations foisted upon the public in *Blankenship* and *Jones*.