176

EGAN ET AL., APPELLEES, *v.* NATIONAL DISTILLERS & CHEMICAL CORPORATION, D.B.A. EMERY INDUSTRIES, APPELLANT.

[Cite as Egan *v.* National Distillers & Chemical Corp. (1986), 25 Ohio St. 3d 176.]

(No. 85-699—Decided July 30, 1986.)

*Steer, Strauss, White & Tobias* and *R. Guy Taft,* for appellees.

*Dinsmore & Shohl, Mark A. Vander Laan* and *Patrick D. Lane,* for appellant.

CELEBREZZE, C.J.   The first proposition of law presented by appellant is that when an injured worker receives workers' compensation benefits from the employee's self-insured employer for an injury received at work, and thereafter is awarded intentional tort damages against his employer for the same injury, the amount of workers' compensation paid by the employer must be set off against the damage award.

We previously rejected such a contention in paragraph three of the syllabus in *Jones, supra,* which held that "[a]n employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative."

More importantly, in this case we conclude that appellant's first proposition of law is not an issue properly before the court. This is because there has been no damage award in this case. The controversy is not ripe. The trial court ruled in appellant's favor on its motion for summary judgment. Appellant's stated basis for its motion for summary judgment was that "* * * acceptance of worker's [*sic*] compensation benefits paid by * * * [appellant] * * * represents a binding election between mutually exclusive legal remedies or, in the alternative, that * * * [appellee] is estopped from maintaining this action." The trial court simply did not reach or rule on the setoff issue as the question of damages was not before it.

Likewise, the court of appeals passed "only on the validity of the final appealable order, which was grounded on the now-repudiated doctrine of estoppel." This court will not ordinarily consider a claim of error which is neither raised nor considered by the court below. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98], paragraph two of the syllabus. Additionally, " '* * * it is well-settled that this court does not indulge itself in advisory opinions.' " *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 183, quoting *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d

401, 406 [23 O.O.3d 361]. See, also, *White Consolidated Industries* v. *Nichols* (1984), 15 Ohio St. 3d 7. Cf. *Muskrat* v. *United States* (1911), 219 U.S. 346.

Under the circumstances herein we hold that where the grant of summary judgment favorable to a defendant neither considers nor awards damages, an issue pertaining to damage setoffs raised by the defendant-appellant for the first time on appeal to the Supreme Court will not be entertained because it is not a justiciable issue. Any opinion the court might express regarding such setoffs to damages not actually awarded would be purely advisory, and it is well-settled that this court will not indulge in advisory opinions.

In its second proposition of law, appellant contends that an employee who elects to receive workers' compensation benefits should be equitably and judicially estopped from subsequently suing his employer on an intentional tort theory. Appellant draws our attention to early decisions from this court which ruled that a workers' compensation recipient "* * * is estopped thereby from afterward maintaining an action for damages in court against his employer who has complied with the Workmen's Compensation Act." *Lopez* v. *King Bridge Co.* (1923), 108 Ohio St. 1, syllabus. See, also, *Conrad* v. *Youghiogheny & Ohio Coal Co.* (1923), 107 Ohio St. 387, paragraph three of the syllabus.

In the instant case the trial court granted appellant's motion for summary judgment based on this reasoning. The appellate court, relying on our decision in *Jones,* reversed the lower court's judgment, which the court of appeals noted "* * * was grounded on the now-repudiated doctrine of estoppel."

For the reasons that follow, we agree with the appellate court that summary judgment was improperly granted in favor of appellant on its doctrine of estoppel theory.

First, we find the holdings in *Lopez* and *Conrad* to be unpersuasive in this case for several reasons. A first reading of the law of these cases, as set forth in the syllabus quoted above, would appear to be persuasive. However, any syllabus holding announced by the Supreme Court must be considered in connection with the underlying opinion and in light of the questions, facts and statutes at issue in the case. *United States Steel Corp.* v. *Bowers* (1960), 170 Ohio St. 558, 565 [11 O.O.2d 410]; *State, ex rel. Reed,* v. *DeMaioribus* (1936), 131 Ohio St. 201, 205 [5 O.O. 552]; *Columbus Ry., Power & Light Co.* v. *Harrison* (1924), 109 Ohio St. 526; *Merrick* v. *Ditzler* (1915), 91 Ohio St. 256, 264; *Booco* v. *Mansfield* (1902), 66 Ohio St. 121; Rule 1(B), Supreme Court Rules for the Reporting of Opinions. In this regard we note that in both *Lopez* and *Conrad* the workers were attempting to file civil *negligence* actions following receipt of benefits. Additionally, the decisions in those cases hinged on early and now *former* provisions of Ohio's General Code which provided workers the option in certain cases to either accept benefits or file a civil action. G.C. 1465-76 provided in per-

tinent part that " '[e]very employe, or his legal representative in case death results, who makes application for an award, or accepts compensation from an employer * * * waives his right to exercise his option to institute proceedings in any court.' " *Conrad* at 391.[2] It was this statute which the court relied on in *Lopez* to reach its conclusion that "* * * [h]aving elected to pursue his remedies under the Workmen's Compensation Act, and having accepted the benefits thereof, he is estopped from now maintaining an action in court against his employer." *Id.* at 6. In light of these distinctions, among others, we do not believe this past precedent is at odds with the instant appellate court judgment or our recent decision in *Jones, supra.*

These cases, however, do serve as a reminder that no single formulation of the doctrine of estoppel is applicable to every situation. In applying the doctrine, each case must be considered on its own merits. *First Federal S. & L. Assn.* v. *Perry's Landing, Inc.* (1983), 11 Ohio App. 3d 135, 144. See, also, *Hampshire City Trust Co.* v. *Stevenson* (1926), 114 Ohio St. 1, 11.

A consideration of the doctrine of estoppel is found in our decision in *Jones, supra,* which rejected the argument that receipt of workers' compensation benefits bars a worker's subsequent intentional tort action against the employer. *Id.* at 99. Our holding in *Jones,* in light of the facts presented herein, is clearly dispositive of appellant's contentions. It reads as follows:

"The receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort." *Id.* at paragraph two of the syllabus.[3]

---

[2] This code section was repealed by the General Assembly in 1931. (114 Ohio Laws 26, 39.) Reliance on past holdings which applied the statute would therefore be all the more suspect.

[3] In *Jones,* at 99, we also set forth a number of policy reasons why an employee is not barred from recovery for an intentional tort by his acceptance of workers' compensation benefits:

"* * * In *Blankenship* [v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 (23 O.O.3d 504)], this court held that 'the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct.' *Id.* at 614. To limit a worker injured by the employer's intentional misconduct to workers' compensation benefits would actually encourage such conduct. *Id.* To bar an intentionally injured worker from the courtroom because he has received such benefits would have the same effect. An employer in such a case could merely refrain from contesting the claim, thereby facilitating the receipt of limited compensation, and then reap the rewards of absolute immunity from further liability. This court will not foster such practices.

"Nor will we force an intentionally injured employee to choose which remedy to pursue. In most cases, practical considerations will compel the worker to accept the easier, more immediate relief afforded by the Act, even though these benefits do not fully compensate the

This issue was later considered in *LeValley* v. *Glasco Plastics, Inc.* (1985), 17 Ohio St. 3d 142, where we, relying on *Jones, supra,* again rejected the proposition that an injured worker who has received benefits is estopped from subsequently suing the employer for an intentional tort. In short, as in *Jones, supra,* we do not find the action taken by this worker in filing both a benefits claim and an intentional tort action to be inconsistent nor that one action was mutually exclusive of the other.

We conclude that appellant has failed to set forth sufficiently compelling reasons for us to depart from the holdings in *Jones* and *LeValley* which we deem controlling in this instance. Cf. *Clark* v. *Snapper Power Equip. Inc.* (1986), 21 Ohio St. 3d 58, 60-61. A contrary holding would place a worker intentionally injured by a stranger in a more favorable position than a worker similarly injured by the intentional tort of his employer. Such a result would indeed be untenable since it would treat two equally injured parties in a decidedly different manner based on a nebulous distinction concerning the identities of the intentional tortfeasors. Quite simply, our holding in *Jones* provides that an employer can not use its participation, nor the participation of its injured employee, in Ohio's workers' compensation system as a shield to dilute its legal responsibility as an intentional tortfeasor.

Based on the foregoing, we are in agreement with the appellate court's conclusion that the trial court erred in granting summary judgment favorable to appellant. Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

*Judgment affirmed*
*and cause remanded.*

---

worker. Most seriously injured workers are not in a financial position to wait out a lengthy, expensive, and risky court proceeding to be compensated for the injury, due to the problems of pressing medical bills, and often the inability to work. Many will thus be forced by harsh realities to opt for workers' compensation. To consider the receipt of benefits a forfeiture of an employee's right to pursue the employer in the courts would not only be harsh and unjust it would also frustrate the laudable purposes of the Act and emasculate our holding in *Blankenship.* Further, it would allow the employer to escape any meaningful responsibility for its abuses.

"This result is implied in *Nayman* v. *Kilbane* (1982), 1 Ohio St. 3d 269, in which this court refused to issue a writ prohibiting the court of common pleas from proceeding in a case where a worker who had already received workers' compensation benefits was seeking common-law damages from his employer for intentionally inflicting the injury. A federal district court in this state has similarly held that forcing an intentionally injured worker to elect his remedy 'runs counter to the goals expressed in *Blankenship.* * * *' *Gross* v. *Kenton Structural & Ornamental Ironworks* (S.D. Ohio 1984), 581 F. Supp. 390, 395.
"'* * *

"Nor does the determination of the Industrial Commission that the injury arose out of employment constitute *res judicata,* barring the claimant from litigating the issue of intentional conduct. * * *'"

SWEENEY and C. BROWN, JJ., concur.

C. BROWN, J., concurs separately.

WRIGHT, J., concurs in the syllabus and judgment only.

DOUGLAS, J., concurs in judgment only.

LOCHER and HOLMES, JJ., separately dissent.

CLIFFORD F. BROWN, J., concurring. I concur wholeheartedly in the sound analysis of Chief Justice Celebrezze's well-reasoned majority opinion. I write separately to address criticism raised by the minority herein concerning, *inter alia,* this court's definition of the term "intentional tort" in *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90.

In *Jones,* we characterized an intentional tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Id.* at paragraph one of the syllabus. This definition is attacked by Justice Douglas today as troublesome, and it is suggested that modification is needed. First, I would direct attention to the fact that the *Jones* definition is reflected in both the Restatement of the Law of Torts and in Prosser & Keeton on Torts (5 Ed. 1984). The Restatement defines "intent" as a term denoting that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A. Prosser & Keeton state that "intent" "extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act." *Id.* at 34, Section 8. It is obvious from the foregoing that the *Jones* definition was a reasoned, rational statement of the law as delineated by this country's most respected legal scholars.

I turn now to other unnecessary comments advanced by Justice Douglas in a lengthy opus concurring in judgment only. Once again, he makes sweeping misstatements and wildly inappropriate comments in a transparent attempt to endear himself to employers and employees alike.

First, I am appalled at the portion of that opinion which discusses case No. 85-1808, *Whisler* v. *Dallas & Mavis Forwarding Co., Inc., a case still pending before this court,* in a manner calculated to telegraph to the parties that the author, and perhaps other justices, are more than ready to dismantle *Jones* given the chance. He repeatedly and pointedly refers to the change in this court's composition since *Jones* was decided for purposes of broadcasting to future appellant-employers that the "new" members of this court do not feel bound by the law as announced in *Jones* and are receptive to arguments challenging it. Moreover, he actually

presumes to define the issue presented by the *Whisler* case, which has not been fully briefed or argued yet, again in an attempt to signal the parties to approach the case in a certain way. Canon 3A(6) of the Code of Judicial Conduct provides that "[a] judge should abstain from public comment about a pending or impending proceeding in any court * * *." This sort of premature bulletin about *Whisler* might be just such a "public comment."

Furthermore, I am sure readers will be absolutely mystified by his lengthy survey of the history of workers' compensation in this state. The instant cause does not present any occasion for this protracted review of a subject which has been often discussed, is well known to lawyers, irrelevant to the issues rendered in this case, and needs no further bookshelf space. Perhaps a law journal would be a more appropriate forum for the author to display his erudition. Possibly a newspaper would be a more suitable vehicle for publicizing the author's self-professed diligence and dedication in "travel[ing] throughout Ohio participating, as a panelist, in various workers' compensation seminars pursuant to Canon 4A of the Code of Judicial Conduct." I hardly think the law of Ohio will benefit from this superfluous essay.

He also unjustifiably impugns this court's reliance in *Jones* on *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St. 791. He states that the *Trumbull Cliffs* case is cited in *Jones* "for a proposition for which * * * [it] does not stand." I vigorously disagree. Any law student knows that a case which is factually distinguishable may still serve as precedent for another case where the underlying principles are analogous. The reference to *Trumbull Cliffs* merely points out a factual dissimilarity without explaining the purported legal significance thereof. In fact, no such significance exists. *Trumbull Cliffs* held that a worker is not precluded from pursuing a common-law suit against his employer merely by virtue of his acceptance of workers' compensation benefits. The fact that the worker was employed by an independent contractor and not by the defendant does not destroy the precedential value of this principle in an analogous setting. *Jones* never represented *Trumbull Cliffs* as factually identical to *Jones*. Factual identity has never been a prerequisite for use of one case as authority for another.

In Part IV of the above-discussed concurring opinion, the author makes a positive and constructive discussion of *Jones* to the effect that an intentionally injured employee should not be forced to choose between pursuing a workers' compensation remedy and pursuing an intentional tort remedy. With that I wholeheartedly concur. What mystifies me is why so much space is then devoted in Part III of his opinion to an abortive effort to demolish the underpinning for *Jones*. Part IV is just a rehash, only in much greater and unnecessary detail, of what was articulately and succinctly stated in *Jones*.

DOUGLAS, J., concurring in judgment only. Since joining this court last year, I have not had an opportunity to comment on *Blankenship* v.

*Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], and *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, two cases which have caused considerable anxiety in Ohio's business community. Thus, while I concur in the judgment of the majority in the case now before us, I write separately to express some of my own thoughts and because the majority opinion, while professing to do otherwise, decides issues that are not properly before us.

## I

### Pre-*Blankenship* v. *Cincinnati Milacron Chemicals*

It was originally thought that since businesses were small and employers worked alongside their employees, that there was no need for lawsuits arising from the workplace. R. Kerger, Remarks at the Workers' Compensation Seminar, sponsored by the Sandusky City Schools Adult Education Program (Sept. 26, 1985). (Mr. Kerger is with the Toledo firm of Marshall & Melhorn.) As a result, the courts developed doctrines making it difficult for employees to successfully sue their employers. *Id.* By the early 1900s, the industrial situation was changing, businesses were becoming more complex, and the number of work-related injuries was growing. See Note, Torts—Intentional Torts in the Workplace—Further Erosion of the Worker's Compensation Act Exclusive Remedy Bar to Tort Actions (1983), 10 N. Ky. L. Rev. 355. Since remedies had been limited, injured employees were in a hopeless position, and the legal environment was ripe for change. See 1 Larson, Workmen's Compensation (Desk Ed. 1986), Section 4.30.

The courts responded to this situation and started to swing the legal pendulum in the other direction. *Id.* at Section 4.40. In addition, labor began seeking legislative reforms that would allow injured workers to sue their employers for work-related injuries. Note, 10 N. Ky. L. Rev., *supra.* The business community vigorously opposed these reforms and the conflict was resolved by a compromise that took the form of typical workers' compensation statutes. *Id.* Pursuant to these statutes, employees agreed to forfeit their right to maintain certain tort actions against their employers in return for a no-fault insurance system that would provide them with some compensation for their work-related injuries.

In 1910, New York passed the first state workers' compensation statute.[4] Larson, *supra,* at Section 5.20. Ohio's system of workers' compensation had its genesis in a 1910 legislative enactment which created a five-member commission to make a comprehensive study of the subject. Young, Workmen's Compensation Law (2 Ed. 1971), Section 1.9. In 1924, Section 35, Article II of the Ohio Constitution became effective. It provided:

"For the purpose of providing compensation to workmen and their

---

[4] In 1911, the New York Court of Appeals found the statute to be unconstitutional. *Ives* v. *South Buffalo Ry. Co.* (1911), 201 N.Y. 271, 94 N.E. 431.

dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.*" (Emphasis added.)

The emphasized portion of the above-quoted language forms the basis of Ohio's previously absolute exclusive remedy rule, *i.e.,* the rule that an injured employee's exclusive remedy for work-related injuries is the receipt of workers' compensation benefits. It was not long, however, before members of Ohio's judiciary began to recognize exceptions to the rule. In *Bevis* v. *Armco Steel Corp.* (1949), 86 Ohio App. 525 [42 O.O. 200], for instance, one member of the Court of Appeals for Butler County explicitly stated that workers' compensation benefits did *not* constitute an injured employee's exclusive remedy. The plaintiff in that case was a bricklayer who allegedly contracted silicosis (a respiratory condition) during the course of his employment. The employer allegedly provided the plaintiff with medical examinations which revealed that he had contracted the disease. Nevertheless, the employer concealed this fact from the plaintiff and fraudulently advised him that the examinations revealed no evidence of the disease. This deception was apparently made in order to induce the plaintiff to return to work where he was exposed to conditions that aggravated his illness. The plaintiff eventually brought suit against the employer for deceit. The trial court, in effect, granted the employer's motion to dismiss for failure to state a claim upon which relief could be granted. The court of appeals affirmed, but Judge Ross wrote a concurrence that took a reasoned approach to the problem. He stated, at 534, that "* * * there are still certain common-law actions which an employee may maintain against an employer which are not abrogated by the provisions of the Workmen's Compensation Act. It seems clear that such actions as libel, slander, malicious prosecution, false representations, and an action for fraud may still be maintained, although the relationship of employer and employee exists, and the facts sustaining such cause of action might involve the incidents of employment."

In 1955—more than twenty-six years before *Blankenship* was decided—some of the previous members of this court recognized exceptions to the exclusive remedy rule. The plaintiff in *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1 [57 O.O. 57], became permanently and totally disabled as a result of a work-related injury. His employer falsely led him to believe that it had properly processed his workers' compensation forms and that he was receiving workers' compensation as a

result. In reality, his employer had withheld the forms and paid the plaintiff directly out of its own pocket for two years. At the end of two years, the employer stopped making payments and plaintiff, after contacting an attorney, found out what the employer had done. The plaintiff then filed an application for workers' compensation benefits, but the claim was denied because the two-year statute of limitations for the filing for benefits had expired. The plaintiff, unemployed and totally disabled, filed a lawsuit against his former employer. The trial court, in effect, granted the employer's motion to dismiss the complaint for the failure to state a claim upon which relief could be granted. The court of appeals affirmed. This court, by a bare four to three vote, held that the Workers' Compensation Act (which codified Section 35, Article II of the Ohio Constitution) provided the plaintiff with his exclusive remedy.

Three judges dissented. One of them, Judge Zimmerman, wrote, "* * * I adhere to the position taken in my dissenting opinion in the case of *Mabley & Carew Co.* v. *Lee, a Minor,* 129 Ohio St. 69, 76 [1 O.O. 366], * * * that where an employee sustains an injury through the negligence or misconduct of his employer, which is clearly outside the scope of the Workmen's Compensation Act, he may maintain an action against his employer to recover damages therefor." *Id.* at 9.

In 1978, a unanimous Court of Appeals for Lucas County ruled that an employee's remedy under the Workers' Compensation Act was not exclusive, and that the employee could sue the employer in tort when he had been injured by the employer's intentional or malicious conduct. *Delamotte* v. *Midland Ross Corp.* (1978), 64 Ohio App. 2d 159 [18 O.O.3d 117]. Three years later, the Court of Appeals for Cuyahoga County adopted the *Delamotte* holding. *Pariseau* v. *Wedge Prods., Inc.* (May 7, 1981), No. 43195, unreported. Shortly thereafter, this court decided *Blankenship*.

Many members of the business community have argued that the *Blankenship* decision was the result of an improper exercise of judicial discretion, and that it constituted a radical departure from prior case law. I respectfully disagree on both counts. The *Blankenship* decision was a careful, measured response to an issue the court was required to decide, and as illustrated in my brief historical sketch, was part of the natural evolution of the law. But more than anything else, *Blankenship* is a very misunderstood case. By now, it has probably been blamed for everything from the "loss" of the Saturn automobile plant to the collapse of Home State Savings & Loan. That is why it is important that we understand precisely what *Blankenship* says and what it does not say.

II

*Blankenship* v. *Cincinnati Milacron Chemicals*

In 1979, eight then-current or former employees of Cincinnati Milacron Chemicals, Inc. filed suit against the company. They alleged that while they were stationed at Milacron's chemical manufacturing facility in

Reading, Ohio, they were exposed to poisonous fumes that caused them to become ill. They further alleged that the company was aware they were being exposed to dangerous chemical fumes, and failed to either correct the situation or warn them of the danger. The plaintiffs claimed that this failure was intentional, malicious and in willful and wanton disregard of their health.

Milacron moved to dismiss the complaint pursuant to Civ. R. 12(B)(6), and cited R.C. 4123.74, 4123.741 and Section 35, Article II of the Ohio Constitution as authority.[5] Civ. R. 12(B)(6) states:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted."

The trial court granted the motion and the court of appeals affirmed. Thus, the *only issue* before this court was whether the plaintiffs had stated a claim upon which relief could be granted. Before deciding this issue, the majority observed that in *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223], this court held:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12[B][6]), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley* v. *Gibson,* 355 U.S. 41, followed.)"

The court went on to hold that since an employer's intentionally tortious conduct does not arise out of the employment relationship, an employee is not precluded by Section 35, Article II of the Ohio Constitution, by R.C. 4123.74 or by 4123.741, from enforcing his common-law remedies against his employer for an intentional tort.

Given the narrow issue that was before the *Blankenship* court, can anyone seriously contend that the decision was wrong? I think not. After all, a contrary decision would have conferred constitutional and statutory immunity on employers who *intentionally* harm their employees.[6] Carried

---

[5] R.C. 4123.74, effective November 2, 1959, provides:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

[6] I hasten to add that the vast majority of employers in Ohio do not, and would not *ever*, fall into a class of employers who would intentionally bring harm to their employees. In point of fact, most employers provide work rules, machinery and equipment, safety programs and supervision specifically designed to promote the safety of their employees. Only a very small minority of employers would ever fall into the original scope and intent of *Blankenship.*

to its logical extreme, such a holding would mean that employers could routinely and *intentionally* harm their employees or even *intentionally* kill them and still be immune from a civil suit for damages. Such a holding would be repugnant to our civilized system of justice, and I cannot believe that Section 35, Article II of the Ohio Constitution and R.C. 4123.74 were designed to achieve such results.

After *Blankenship* was remanded to the trial court, the case was settled. Thus, *Blankenship* never presented this court with the opportunity to elaborate on the issues raised therein. Some of this elaboration took place in *Jones* v. *VIP Development Co., supra,* and therein lies the problem.

### III

#### *Jones* v. *VIP Development Co.*

In *Jones,* this court held that:

"1. An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur.

"2. The receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort.

"3. An employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative."

Since I have been a member of this court, I have traveled throughout Ohio participating, as a panelist, in various workers' compensation seminars pursuant to Canon 4A of the Code of Judicial Conduct. Based on my experiences at these seminars and my own reading of *Jones,* it appears that *Jones* has created some serious problems in our workers' compensation system. Thus, while I am in agreement with the second holding in that case, I believe that both the first and third holdings need some modification. However, the case *sub judice* does not present the proper vehicle, notwithstanding the commentary in the majority opinion and a dissent, to discuss these issues. A detailed examination of these issues must wait another case and day but suffice to say that as has been done in the past, any citation to *LeValley* v. *Glasco Plastics, Inc.* (1985), 17 Ohio St. 3d 142, as being in accord with paragraph three of the syllabus in *Jones* regarding the setoff issue is just plain wrong as *LeValley* dealt *only* with the election question and in no way involved the setoff issue. The case was decided on summary judgment on the election issue and was reversed by this court *solely* on that issue on the authority of *Jones*. A review of the memoranda in support of and opposition to jurisdiction confirms this conclusion.

Likewise a problem exists in the *Jones* case where the majority cites to *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St. 791, for a proposition for which the case does not stand. As is plain from its text, *Trumbull Cliffs* does not, by any stretch of the imagination, support the proposition for which the *Jones* court cited the case. The plaintiff in *Trum-*

*bull Cliffs* was an employee of an independent contractor—*not* the employee of the defendant, Trumbull Cliffs Furnace Co.

A complete analysis of the *LeValley* and *Trumbull Cliffs* cases must likewise wait until another day.

The same problem exists in the dissent wherein *Bradfield* v. *Stop-N-Go Foods* (1985), 17 Ohio St. 3d 58, is cited. There was no "* * * further erosion of the intent requirement" in *Bradfield*. The issue of intent or the definition of "intentional tort" was not presented to this court in *Bradfield* and the discussion in the dissents therein and a dissent herein are just not accurate. *Bradfield* was another Civ. R. 12(B)(6) case and the *only* issue before this court, as presented by the parties, was the question of election. This court reversed *Bradfield* based *solely* on the second paragraph of the *Jones* syllabus and to say otherwise, as has been done over and over again, is not only unfair—it is inaccurate. In *Bradfield,* as well as *LeValley,* there were no factual determinations before this court or the lower courts deciding the procedural question.

## IV

### *Jones—Paragraph Two of the Syllabus—Exclusive Remedy*

It has been argued, quite vehemently in some quarters, that an intentionally-injured employee should be forced to choose between pursuing a remedy for workers' compensation or pursuing an intentional tort remedy. As an abstract proposition of law, this proposition would seem to have some merit but, as the *Jones* court noted, this would be highly impractical. *Jones, supra,* at 99.

Frequently, an injured employee is rushed to a hospital emergency room for treatment. As soon as the hospital personnel determine that the employee was injured while on the job, they will ask the employee to sign a workers' compensation form. If the injured party signs the form, then he has "elected" to receive workers' compensation benefits. If he refuses to sign the form, he might be denied treatment, at least until some method of payment is established. The harsh reality of the situation is that the injured worker is placed squarely between a legal rock and a hard place. If he refuses to sign the form, he will receive no immediate benefits and he (and his family) will be required to suffer while he pursues his common-law remedy. If he accepts the workers' compensation, he waives his right to bring his common-law damage action no matter what injuries were incurred or how egregious and intentional the act causing the injury. In any event, the injured worker is required to make a Hobson's choice and it would most certainly be unfair for the courts to hold that he is forever bound by that choice.

Conceding that at first glance, Section 35, Article II of the Ohio Constitution and R.C. 4123.74 seem to preclude an injured employee, no matter *what* the cause of the injury, from seeking *any* remedy against his employer outside the Workers' Compensation Act, it is my judgment that

a closer analysis and examination inevitably leads to an opposite conclusion where the complained-of act of the employer, which brings about the injury, is intentional in nature.

Pursuant to the constitutional authority found in Section 35, Article II, R.C. Chapter 4123 was enacted to provide the legislative scheme for the workers' compensation system. With regard to employer immunity from suit, R.C. 4123.74, in part, provides that:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employer *in the course of or arising out of his employment,* or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund * * *." (Emphasis added.)

Thus, complying employers are generally immune from suit by employees for any injury occurring *during the course* of employment. However, R.C. 4123.74 contains additional phraseology that must be considered. The section also provides that a complying employer will not be liable to suit by an employee for injury incurred by the employee *arising out of his employment.* Thus, the statute contemplates, or at the very least it can be so interpreted, that those injuries which occur for which an employer is exempt from suit are those occurring within the contractual employment relationship. Can it be seriously contended that when one enters an employment relationship with his employer, that the employee thereby agrees and consents to permit the employer to commit an *intentional* act against him which results in harm and injury, in exchange for receiving workers' compensation benefits which provide only for partial reimbursement for wages lost, medical bills and/or an award for his disability or a loss of a part of his body? Would such an injury, intentionally inflicted, really be one *arising* out of the employee's employment. I think not! To hold otherwise would be to permit an employer, so inclined,[7] to commit acts, with immunity, as hereinbefore delineated and then hide behind the workers' compensation system for protection from suit. The bargained-for exchange, between employer and employee, which provides the employer with immunity from suit and the employee with compensation for an injury occurring in the workplace must be fair and equitable to both parties. The protection afforded by the Workers' Compensation Act should be used by both parties as a shield—not as a sword.

Thus, it is my judgment that an injury to an employee, caused by the *intentional* act of an employer, is not an injury that arises *out of* the employment relationship and accordingly the employee is not restricted, as an exclusive remedy, to seeking compensation for the injury only

---

[7] See footnote 6, *supra.*

through the Workers' Compensation Act. The second holding in *Jones* is sound in law and in public policy, and is just plain fundamental fairness.

## V

### *Egan* v. *National Distillers & Chemical Corp.*

In the case at bar the trial court, on February 16, 1984, issued a "Memorandum of Decision" which stated, in part, the following:

"More significant, however, is whether an employee whose injury was ruled compensable under worker's [*sic*] compensation statutes may thereafter enforce a common law remedy against the employer. The remedies are mutually exclusive by virtue of the *Blankenship* Case * * *.

"Logically, an injured employee cannot knowingly accept worker's [*sic*] compensation upon a finding that his injuries were accidentally received in the course of or arising out of his employment, and then maintain in a separate civil action that he was the victim of an intentional tort which is not work-related. Since plaintiff applied for and received additional benefits after he filed this suit, he is now estopped from enforcing his claim for an intentional tort by the doctrine of election of remedies. * * *"

On February 27, 1984, the trial court filed an order granting the motion for summary judgment "* * * on grounds that plaintiffs, Leroy F. and Catherine S. Egan, are estopped to pursue their claims herein for the reasons stated in that memorandum [February 16, 1984] * * *."

Thus, the trial court granted summary judgment to appellant based, and *only* based, upon the undisputed fact that appellee Leroy Egan had previously sought and obtained, before filing his "intentional tort" complaint, workers' compensation benefits for the injuries sustained by him during the course of his employment with appellant.

The court of appeals, in a decision and judgment entry filed March 6, 1985, reversed the judgment of the trial court and did so *only* on the basis of paragraph two of the syllabus in *Jones*. The court said in its decision:

"* * * It is immaterial whether the workers' compensation benefits are sought before, after or concurrently with the suit for common law damages. This is controlling authority, under the rule of judicial supremacy, irrespective of all other considerations. Plaintiffs' first assignment of error, in which they assert that the granting of defendant's motion for summary judgment was error, has merit."

Accordingly, it is clear that the *only* issue decided by both the trial court and the court of appeals was whether appellee Leroy Egan was precluded from seeking, in a separate civil suit, common-law damages because he had sought and received workers' compensation for the same injury. For the reasons I have expressed herein, *supra,* it is my judgment that the remedies are not mutually exclusive and thus I concur, for that reason *alone,* in the judgment of the majority and would affirm the decision of the court of appeals. In doing so, and in joining in the remand to

the trial court, I would in no way restrict the trial court from once again considering a motion for summary judgment by appellant if the pleadings of appellees do not allege intentional conduct of appellant or the evidentiary material to be presented by appellees does not rise to the level of establishing intentional conduct by appellant. Suffice to say that all of the factual material contained in appellees' brief and argued to this court is *not* part of the record and should in no way bear on this court's decision. The record reflects that appellees never filed with the trial court any depositions, documents they refer to or any other material excepting their complaint and memorandum of law opposing summary judgment. Thus, in so arguing, appellees are in violation of the rules.

Likewise, appellant is out of bounds. I have reviewed appellant's motion for summary judgment, its memoranda of law in support of the motion (which it then calls a "motion to dismiss") and appellant's brief and supplemental brief in the court of appeals (as appellee). The *only* arguments made by appellant in both courts were the election of remedies argument and an argument as to the sufficiency of the complaint. Thus, for appellant to present to this court, for the first time in this case, the question of setoff and then to argue to us that not permitting a setoff to a self-insured workers' compensation employer is unconstitutional, when these issues have been neither pled, briefed nor argued in the lower courts is not in keeping with the rules. Such actions do not militate for the preciseness of opinions sought and needed by the bench and bar alike.

Thus, appellant's Proposition of Law No. 1 is not properly before the court and need not be addressed. Appellant's Proposition of Law No. 2, a reworking of the election of remedies argument based upon equitable and judicial estoppel, has been decided by *Jones,* the majority opinion herein and discussed *supra* in this concurrence.

Accordingly, I concur in judgment only.

## VI

*Whisler, Admx.,* Appellee, v.
*Dallas & Mavis Forwarding Co., Inc.,* Appellant

### Case No. 85-1808

This court, as it has been constituted since January 2, 1985, has not had a suitable opportunity to review the *Jones* decision. As discussed previously herein, the case now before us likewise does not present such an opportunity as it was decided in the trial court solely on the exclusive remedy issue and on a motion for summary judgment. The reversal in the court of appeals was, likewise, on that basis. Recently, this court agreed to hear the case of *Whisler, Admx.,* Appellee, v. *Dallas & Mavis Forwarding Co., Inc.,* Appellant. The issue in *Whisler* involves the first paragraph of *Jones* regarding the definition of "intentional tort." *Whisler* will require *this* court to review that portion of the *Jones* decision.

## VII

All of the foregoing was written *before* the Legislature of Ohio passed and the Governor of this state approved the recent legislation amending the workers' compensation law. Of course, I make no comment herein concerning the new law except to note that after having read the legislation, it is my judgment that, pursuant thereto, the only course of action available to this court in the case before us is to remand the cause to the trial court for it to rule on the number of questions that surely will arise when this case is reconsidered in concert with the new law. Thus, I concur in judgment and in the remand to the trial court for further proceedings.

LOCHER, J., dissenting. I am compelled to dissent for the reasons set forth in my dissent to *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 101, with respect to the issue of double recovery.

HOLMES, J., dissenting. The basic theme of the majority here is an all too familiar one in its continued misinterpretation of the Constitution and statutory laws relating to workers' compensation in Ohio. Again, the majority incorrectly recognizes in the now-existing law the right of an employee to bring a common-law tort action against his employer, and permits such action even though his employer is complying with the Ohio workers' compensation laws, and even though the employee has filed an injury claim and is participating in the fund.

In further derogation of the philosophy of the workers' compensation system, the majority allows no setoff for the compensation received by the employee for any recovery obtained in the common-law tort action. This, in its entirety, is contrary to the expressed public policy of Ohio, both constitutionally and statutorily. I have spoken out generally in dissent in this regard in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504]; *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90; and in *Bradford* v. *Stop-N-Go Foods* (1985), 17 Ohio St. 3d 58.

As to the preclusion of an employee who has participated in the Workers' Compensation Fund, or his representative, from pursuing a common-law action for damages against his employer for an intentional tort as provided in the syllabus law of *Jones, supra,* I need only point to the very cogent dissenting remarks of former Justice William B. Brown, the author of *Blankenship.* He stated: "The majority's holding that the receipt of workers' compensation benefits does not preclude an employee from also pursuing a common-law action for damages against his employer for an intentional tort is not only inconsistent with the legal analysis employed in *Blankenship* * * *, it is more importantly in direct contravention of the Ohio Constitution. * * *" *Jones, supra,* at 102.

Thus, even the author of *Blankenship* was disturbed that dual paths of recovery were provided by this court, and stated that an employer should be immune from two separate litigations for a single injury. His conclusion

was based upon the theory that he, as author of the majority in *Blankenship*, had reasoned that: "One act of an employer cannot logically be within the scope of employment while at the same time not within the scope of employment. Nor can one act simultaneously be both a hazard of employment and not a hazard of employment. One act of an employer, under *Blankenship*, simply cannot be both negligent and intentional. Hence, an injury may either be compensable under the workers' compensation system or be compensable at common law for an intentional tort. It cannot logically be compensable under both, as the majority so finds." *Jones, supra*, at 102. Even though I firmly disagreed with Justice Brown relative to the syllabus law of intentional tort pronounced in *Blankenship*, as purportedly defined in *Jones*, based upon Ohio legislative and constitutional history, I could not but agree with his comments relative to the preclusion of later common-law actions where one had participated in the Workers' Compensation Fund.

Further reasoning supportive of not permitting multiple recovery is that a fundamental principle in awarding compensatory damages to an injured plaintiff is that he is entitled to be compensated in an amount that will make him whole. The primary objective is to make the complainant whole for the alleged wrong inflicted upon him. There have been many cases here and elsewhere that have recognized that damages should not exceed the loss sustained by the plaintiff. In *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104, 107 [52 O.O.2d 395], this court stated:

"In Ohio, as elsewhere, it is a rule of universal application in a tort action, that the measure of damages is that which will compensate and make the plaintiff whole."

An injured employee who receives workers' compensation benefits should be estopped from later maintaining an action for damages for an alleged intentional tort of his employer, in that such later claim is entirely inconsistent with those litigated in the earlier proceeding. This reasonable proposition of law was so expressed by former Justice William B. Brown in his dissent in *Jones, supra*.

Constitutionally, there is no specific authorization in Ohio to bring the civil action sounding in tort against an employer. However, even though this court by judicial fiat has authorized such an action, if there be a selection of such a civil remedy by the employee, any recovery received by the employee in such an action should be subject to a setoff of the payments made either through the Workers' Compensation Fund or directly by a complying self-insured employer as in the instant case.

The prior public policy pronouncements of the Ohio Constitution and the laws enacted by the General Assembly were vividly clear to most observers as to the exclusivity of the workers' compensation law in matters relating to claims brought by employees for their industrial injuries. However, these pronouncements were completely rejected by the majority of this court. The majority again pronounces what it wishes the law to be in

derogation of further and even more legislatively expressed public policy concerning the workers' compensation law of Ohio. By way of Am. Sub. S.B. No. 307, enacted into law and signed by the Governor, the General Assembly has specifically pronounced the public policy of Ohio in R.C. 4121.80(B): "* * * That the immunity established in Section 35, Article II of the Ohio Constitution and sections 4123.74 and 4123.741 of the Revised Code is an essential aspect of Ohio's workers' compensation system; that the intent of the legislature in providing immunity from common law suit is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided * * *."

The new Act grants a common-law tort action for an intentional tort, but only to be determined according to the specific mandates of the Act. Accordingly, the Act provides in Section 4121.80(A) that any such cause of action may be maintained against a complying employer "for an excess of damages over the amount received or receivable under Chapter 4123 of the Revised Code and Section 35, Article II of the Ohio Constitution, or any benefit or amount, the cost of which has been provided or wholly paid for by the employer."

Although the new Act would permit the dual routes of action, the common-law claim may be only for such amounts that are in excess to any payments made to an employee through the fund, or amounts paid out directly by the employer.

Therefore, I dissent to the majority opinion herein.