MOSKOWITZ ET AL., APPELLEES, *v.* FEDERMAN ET AL., APPELLEES; FEDERMAN, APPELLANT. (Two cases.)

(Nos. 3558 and 3561—Decided April 21, 1943.)

*Mr. William F. Marsteller,* for appellees Bertha F. Moskowitz and Sanford Schwartz.

*Messrs. Smoyer, Kennedy, Smoyer & Vogel,* for appellee Charles E. Federman, as an individual.

*Messrs. Slabaugh, Seiberling, Guinther & Pflueger,* for appellees Charles E. Federman and Clarence Rausch as executors and trustees.

*Messrs. Horwitz, Kiefer & Harmel, Mr. Aaron J. Frank* and *Messrs. Buckingham, Doolittle & Thomas,* for appellants.

DOYLE, J. Leo G. Federman, a resident of Akron, Ohio, executed an instrument purporting to be his last will and testament. Several months later—on the 8th day of August, 1941—he, a widower and without children, died. His estate approximated one-half million dollars. It consisted in great part of assets the character of which would in the interests of economy require years to liquidate. The instrument directs that specific bequests be made to a number of nephews, nieces, relatives by marriage, religious institutions, etc., in the total amount of $70,700. Item IV of the instrument disposes of the residue of the estate through two

named trustees after payment of the specific legacies. Item V is termed by counsel an *"in terrorem"* clause, which will hereinafter be discussed.

One Bertha Federman Moskowitz, a sister, commenced an action in the Court of Common Pleas of Summit county, asking for a declaratory judgment in which *inter alia* she sought a construction of item IV of the will, to have determined whether it was sufficiently definite as to beneficiaries to be valid. She likewise at about the same time and within the statutory period, started an independent action to contest the will.

In the first proceeding (for declaratory judgment), among the many defendants, were the two named trustees, and Benjamin R. Federman (a brother of the whole blood) and Feiga Federman (a sister of the half blood). The two trustees and Benjamin R. Federman and Feiga Federman each filed answers asking for a construction of the will, and the latter two prayed that their rights be protected. The trustees also filed a cross-petition setting forth the judgment which they thought would be a proper construction of the controversial items.

On these pleadings the cause came on for trial. Evidence was offered and admitted and argument had, during which it developed that the petitioner Bertha Federman Moskowitz entered into complete agreement with the construction given the will by the trustees and did not challenge the validity of any of its provisions.

The defendants Benjamin R. and Feiga Federman had not suggested any construction of the controversial items, either in their pleadings or in court, and had assumed that the petitioner Bertha Federman Moskowitz would prosecute the challenge in her pleadings. Taken by surprise by the change of position of the said petitioner, they asked the right to file amended plead-

ings. This was granted. Thereupon they plead that item IV did not create a valid and enforcible trust and "that the attempted trust provided for in said item is void and of no effect for the reason that there are no definitely ascertained beneficiaries, nor any definite class of beneficiaries from which to select beneficiaries who shall take the beneficial interests, and that the residue of said estate so devised and bequeathed to the trustees passes to said trustees to be held by them upon a resulting trust for this cross-petitioner and said other heirs at law of the said Leo G. Federman, who are entitled to participate therein in the proportions in which they would have participated in the estate of Leo G. Federman under the statutes of descent and distribution of the State of Ohio, had the said Leo G. Federman died intestate."

Judgment was subsequently rendered pronouncing the validity of item IV, and that it created an express testamentary trust with the power in the trustees to select from two classes of beneficiaries—*viz.*, next of kin and charitable organizations, in any proportion and in any amount, and to the exclusion of one class or the other, if so desired by them. It was further found that the so-called "*in terrorem*" clause (item V) operated to bar all legatees and potential beneficiaries of the trust who have started will contest proceedings or who have challenged the validity of the provisions of the will in the instant case, and the decree specifically excluded these appellants, Benjamin R. and Feiga Federman, from participation in the estate either as legatees or as members of a class.

From this judgment, each of the said defendants prosecuted a separate appeal on questions of law to this court.

The primary errors of the trial court of which complaint is made are:

1. Error of the court in holding that an enforceable testamentary trust was created by the will.

2. Error in holding that the so-called *"in terrorem"* clause "applies to those who seek legal construction of the will by petition or by cross-petition" in this action.

Item IV provides:

"All the rest and residue of my property (after the payment of my debts and the specific legacies herein made) whether real or personal, and wheresoever situate, I give, devise and bequeath to Charles E. Federman, of Lansing, Michigan, my brother, and to Clarence Rausch of Akron, Ohio, as cotrustees, however, upon the following uses and trusts, to wit:

"(a) They shall hold, manage and control all of my estate which is transmitted to them by my executors when a final accounting has been made by said executors: with full powers to retain any property in the form in which it is received, or to sell and dispose of all or any part thereof, and to invest and reinvest the proceeds therefrom. They shall receive and account for any income from said trust property, and may, if their discretion so determines, permit such income to accumulate.

"(b) I give to them full, sole, and uncontrolled discretion as to the distribution and disposition of said trust estate. They may determine the persons, charitable organizations, to whom distributions shall be made, the times for distribution, and the amounts to be distributed to them, or any of them.

"Distribution of payment of any sum by them shall not be taken to entitle the distributee to other or further distributions or payments, but the discretion of said trustees as to further distributions shall be absolute and uncontrolled.

"(c) It is my desire that distributions of the residue may be made among my next of kin, meaning there-

by, my brothers and sisters, their children and grand-children, but my desire shall not be taken to control the discretion of my trustees. The expression of desire herein made shall not be taken to be a desire that distribution be made equally or proportionately among all my next of kin, but in the uncontrolled discretion of my trustees, distribution may be made to part of them to the exclusion of others, and distributions may be made in such amounts—whether equal or otherwise— as said trustees may determine.

"The said trustees may, in their discretion, make distributions to Charles E. Federman, my brother, even though he be one of said trustees.

"(d) My trustees shall make accounting from time to time of the income received and property held by them, and of the payments and distributions made, but no exceptions to such accounting shall be available to any one upon the ground that the distribution was unauthorized either as to the amount or person, for I desire my trustees to be completely free in the exercise of their discretion.

"(e) Twenty years after the date of my death, however, the trustees shall make distribution of any part of the trust estate then remaining in their hands, and shall divide such property as then remains equally among all my next of kin who may then be living.

"(f) If either of my said trustees shall be deceased before the final distribution of the trust assets, then the survivor shall continue as sole trustee. If both are deceased, then a successor trustee shall be appointed by the Probate Court of Summit County. Such successor trustee shall have no power or discretion as to the persons or corporations among whom distribution is made, but shall make distribution equally among my then living next of kin. Such distribution shall be accomplished within a reasonable time, but the succes-

sor trustee may exercise his discretion as to the time for sale or disposition of assets, and the sale price to be received therefor.

"(g) Reasonable compensation shall be allowed to my said trustees for their services, which shall be a charge upon the trust estate, and shall be paid semi-annually when accountings are made. Said trustees may make reasonable expenditures for procuring services of counsel and others in managing and distributing the trust assets."

Item V provides:

"In the event that any beneficiary named herein, or any one of my next of kin, shall begin or maintain any proceeding to challenge or deny any of the provisions of this Will, the legacy herein made to him or her shall lapse and fall into the residue, and my trustees are directed and required to refrain from making any distribution of any sum whatever to the person, if any, who shall seek to contest this Will, or any of its provisions."

Under their first claim of error, appellants assert that the "attempted trust is ineffectual in law because it is unenforceable in a court of equity for want of definiteness"; that "the uncontrolled discretion granted to the purported trustees coupled with the absence of ascertainable beneficiaries makes it impossible for the court to compel the trustees to follow any course of action"; that "the express words of the instrument, 'persons, charitable organizations,' fail to define a legally sufficient class of beneficiaries"; that "the insurmountable obstacle to sustaining the attempted trust is the inability of anyone to enforce it. If 'persons' be the class, it is too indefinite. * * * If 'charitable organizations' are a class, the absence of a designation of purpose or objects of benevolence renders it impossible for a court to determine whether

the wishes of the testator are complied with. Most important, if there be two classes from which the trustees may select, even if one be relatives, no one may enforce the trust since the trustees may exclude completely one or the other of the classes. If relatives ask enforcement, the court can only say, it is possible that the entire residue will be given to charity, and therefore, relatives have no standing in court. If the attorney general asks enforcement on behalf of charities, the court must answer that he has no standing in court since there is no assurance that any amount will be given to charity.''

We are concerned in part in this decision with the application of the rules of law to the creation of express trusts, or, in other words, the rules applicable to the legal creation of a ''fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person [or persons], which arises as a result of a manifestation of an intention to create it.'' 1 Restatement of the Law of Trusts, Section 2.

It need not be argued that a trust cannot be created in favor of a person or persons who are not sufficiently identified. However, sufficient identification exists if such trust is created in favor of the members of a class of persons, where the class is definite enough so that its membership can be ascertained. This thought is expressed in 1 Restatement of the Law of Trusts, Section 120, in the following terms:

''The members of a definite class of persons can be the beneficiaries of a trust.

''Comment: a. Application of the rule. A class of persons is definite within the meaning of the rule stated in this Section if the identity of all the individuals comprising its membership is ascertainable. If the

members of the class are not ascertainable within the period of the rule against perpetuities, the intended trust fails. * * * A class is definite where it includes several persons designated by name, or the children or grandchildren or nephews and nieces or descendants or next of kin of a designated person.''

Likewise the validity of a devise to trustees for the benefit of persons of a class with power vested in the trustees to select certain ones and to determine the amount distributable to those selected, has become the settled law. This rule is pronounced in the same citation to the Restatement of the Law of Trusts under item c in the following language:

''c. Power of selection by trustee. A trust may be created for the benefit of the members of a definite class of persons although by the terms of the trust the trustee is authorized to select which of the members of the class shall take and in what proportions. This is true whether the trustee has discretion only as to the proportion of the trust property which each member of the class is to receive or has discretion to exclude some members of the class altogether.''

Despite the learned argument of appellants in which they claim that ''the expression of desire [in par. c of item IV] is meaningless * * * except as a suggestion, and the trustees are limited only 'to persons, charitable organizations,' '' and further that ''the use of the word 'persons' cannot have been solely to distinguish the individual beneficiaries from the general animal world,'' and that by the use of the word ''persons'' it was intended that individuals other than relatives could be beneficiaries, the members of this court are of the opinion that the provisions of item IV can be reasonably construed to mean that it was the intention of the testator to vest an uncontrolled discretion in the trustees to make awards or not as they saw

fit to the members of a definite class of persons—namely, his "next of kin, meaning thereby * * * [his] brothers and sisters, their children and grandchildren"; and that the word "persons" as used in paragraph b was explained in paragraph c as meaning *those relatives described therein who, in the discretion of his trustees, could be the recipients of his bounty.*

Paragraph b describes the powers vested in the trustees to make awards to persons and charitable organizations. Paragraph c designates the class of persons. This designation was necessary to create a definite class of persons under the rules set out above. However, there was no necessity to designate the kinds of charitable organizations, as will be hereinafter demonstrated.

Answering the claim that as to the noncharitable part of the trust (discretionary award to "persons") there is no person who has the authority to compel performance by the trustees.

The modern doctrine is that a suit in equity can be maintained by any member of the class to redress or enjoin a breach, although the named trustee has the authority to determine which of the members of the class shall take and although the power has not been exercised. And this court so holds the law to be. Especially is this so in this case, in view of the fact that the will contains a provision that, if the fund shall not be distributed under the trust within twenty years, the residue shall then be distributed among a definite class of relatives.

It is further claimed by the appellants that "There must be an unquestioned intention to devote the legacy to charitable purposes, and *none other*. There must also be a description of the *specific class* of charities, so that the trustee may be guided in making his choice,"

and further that "Where the testator manifests an intention to devote his property to both private and charitable purposes, * * * the amount assignable to each must be expressed." (Italics ours.)

The words "charitable organizations" are used in the will. Nowhere does it appear in the instrument that the scheme of the testator was to have his property, in the discretion of the trustees, devoted to any particular type of charity. Under such language, the type or kind of charitable organizations is lodged in the discretion of the trustees; and, under these circumstances, neither the charitable organizations nor classes of charitable organizations who may receive benefits from the trust need be designated, for the subject upon which the discretion of the trustees is to be exercised is specific, and limited to "organizations" devoted to charity.

"A charitable trust can be created although there is no definite or definitely ascertainable beneficiary designated." 2 Restatement of Trusts, Section 364. And to the same effect is *Palmer* v. *Oiler, Exrx.,* 102 Ohio St., 271, 131 N. E., 362.

"2. Gifts for charitable purposes have always. been favored in equity, and trusts created for such purposes are carried into effect upon broad liberal principles of equity jurisprudence under circumstances where a purely private trust might fail." *Gearhart* v. *Richardson,* 109 Ohio St., 418, 142 N. E., 890.

The words "charitable organizations" denote a definite, ascertainable class.

Directing attention now to the claim that "if there be two classes from which the trustees may select, even if one be relatives, no one may enforce the trust since the trustees may exclude completely one or the other of the classes," this court determines that, as far as the "enforcement" of this trust is concerned, any one of

the class of relatives therein named, or the proper government official on behalf of "charitable organizations," can enforce the trust insofar as they can appeal to a court of equity to stop a mismanagement or improper administration of the trust. Of course, they cannot ask a court to require the trustees to award them any part of the trust property, because such an award is entirely discretionary with the trustees. In other words, under the provisions of this will, the trustees can in their discretion make award to all who come within the respective classes, to some in either or both classes, or perhaps to none at all except at the end of 20 years; and any of the possible beneficiaries may enforce the trust, as heretofore stated, although the trustees have not exercised their discretion in naming them or any one of them as beneficiaries.

But in all events the trust must terminate at the end of twenty years after the death of the testator under the provisions of paragraph e of item IV.

It therefore appears that within a period of twenty years from the death of the testator the corpus may be entirely alienated to any of those falling within the respective classes designated, and, if not, then the balance remaining at the end of such period *must* be distributed equally among all of the testator's "next of kin." Thus the entire trust terminates within the rule against perpetuities, regardless of the manner of exercise of the trustees' discretion.

The instrument under consideration violates none of the principles of trusts pronounced in the many cited cases and texts. And it may be fairly stated that a testamentary trust which is created for the distribution of the assets of an estate to members of a definite class of persons, or to charitable organizations, or to both or to none, all within the entire discretion of the trustees, and which provides for a distribution of the entire

residue of the estate at the end of twenty years from the time of testator's death, is a valid trust, is within the rule against perpetuities, and which trust, if breached, may be enforced by any member of a class named as possible beneficiaries, and even though they have not been designated by the trustees to take.

A testator has the right to dispose of his own property in such manner, not repugnant to law, as he sees fit, and his intentions ought to be carried out unless they contravene some positive rule of law, or are against public policy.

Thus far we see no vice in the instrument as drawn.

Attention is now directed to item V in the will, which has been designated by counsel as the *"in terrorem* clause." It is the claim of the appellees that the appellants are barred from participation because of their conduct, and the Court of Common Pleas so decided. With trepidation I approach the *"in terrorem"* doctrine, because of the confusion of thought evidenced in the many reported cases and published discussions.

This strange doctrine was conceived in the law of England centuries ago to treat situations entirely different from the usual "no contest" and "no challenge" conditions in modern wills. In England in the 17th century, jurisdiction over legacies was vested concurrently in the chancery and the ecclesiastical courts. The former applied the common law, and the latter the canon law bottomed upon the civil law. According to both legal systems, conditions in restraint of marriage were void as against public policy. But, under the civil law, conditions prohibiting a beneficiary's marriage without the consent of certain persons were void; while under the common law such conditions were held to be valid. The common-law courts, in an attempt to reconcile this conflict, adopted an incongruous fiction. In cases involving a bequest of personal

property, if the testator failed to provide for a gift over in the event of a breach of condition, it was presumed that he really did not intend that the condition should be enforced, and therefore the condition was not enforced by the courts. The words *"in terrorem"* came into being as descriptive of this situation, in which it was determined that the only purpose of the condition was to frighten the legatee into compliance. On the contrary, if the testator added a gift over upon breach, then the courts determined that he meant what he said and enforced the condition. The doctrine was not applied to the devise of real property.

Through the influence of writers of textbooks and judges steeped in the traditions of the common law, there crept into American jurisprudence the application of the *"in terrorem"* doctrine to "no contest" conditions in wills generally.

The Ohio Supreme Court decided one of the first cases in the United States in which this doctrine was urged (1869). The court held that the provision in the will was not *"in terrorem"* in character, and determined that doubtful questions upon which the validity of the will may depend affect only the interests of the parties to the controversy. The question of public policy apparently was not urged, and certainly was not decided. The interesting syllabus is as follows:

"1. A condition in a will whereby the testator excludes any one of his heirs who 'goes to law to break his will' from any part or share of his estate, is valid and binding; and effect will be given to it, as well in respect to bequests of personalty, as to devises of real estate.

"2. A legacy forfeited by the breach of such a condition will pass to the general residuary legatees named in the will, without express words to that effect in the will." *Bradford* v. *Bradford, Exr.,* 19 Ohio St., 546, 2 Am. Rep., 419.

It is not the desire of the writer of this opinion to guess or speculate on the attitude of the court of last resort in this state if a simliar case is again presented. Suffice it to say that the more modern doctrine seems to be that public policy, probable cause, good faith, and a variety of other matters, should be considered in connection with the facts of each particular case examined, and that hard and fast rules cannot be pronounced and made applicable to all cases.

For instance, what would be the effect of permitting a "no contest" clause to prevail in cases of contests made upon the grounds of fraud or undue influence, when the insertion of the condition was the work of those exerting the fraud or undue influence? Is there a public policy involved? Or is it true, as stated in *Bradford* v. *Bradford, Exr., supra,* at pp. 547-548, that "No considerations of public policy require that an heir should contest the doubtful questions of fact or of law upon which the validity of a devise or a bequest may depend"? Other illustrations are legion.

The facts of the instant case are not the facts in any of the three reported Ohio cases in which the doctrine is mentioned: *Bradford* v. *Bradford, Exr., supra; Irwin* v. *Jacques,* 71 Ohio St., 395, 73 N. E., 683, 69 L. R. A., 422; and *Bender* v. *Bateman,* 33 Ohio App., 66, 168 N. E., 574. The problem before this court is one of first impression. And in answering it we determine that, where heirs and legatees are made parties defendant in an action by another heir and legatee, asking for a declaratory judgment to determine the validity of a clause in a will creating a trust, and in which action two defendants, heirs and legatees, out of many, file cross-petitions and urge the invalidity of certain provisions of the will, thereby alone countering the claims of all other parties that the provisions are valid, such pleading and argument creates the issue for determina-

tion by the court, and does not "begin or maintain * * * (a) proceeding to challenge or deny any of the provisions of * * * (the) will." Nor does it. constitute a contest of the will or any of its provisions within the directions given the trustees. The doctrines of condition subsequent, probable cause, public policy, good faith, and "*in terrorem*," do not apply to such an action in declaratory judgment under such circumstances.

A proceeding for a declaratory judgment must be based upon an actual controversy. The proceeding does not lie to obtain a judgment which is merely advisory or which merely answers a moot or abstract question. A court will not take jurisdiction to render a declaratory judgment where there is no question of difference between the parties and both sides are asking for the same judgment, and the proceeding in reality is one to obtain the advice or opinion of the court and no more. 50 A. L. R., 45, Anno. IV c.

The instant action was originally filed by an heir and legatee, and by an assignee of part of her claim, asking for the construction of a will, and in which said heir and legatee challenged the creation of a legal, enforcible trust. She at the same time filed an independent action to contest the validity of the will under the statute. She made the executor, trustees, and various heirs, including these appellants, party defendants to the action for a declaratory judgment. The cause came on for hearing, and in the trial, she, the petitioner, foregoing her original claim, agreed with the executor that a valid trust was created, thus unexpectedly creating a noncontroversial situation and cancelling the "issue." The court thereupon permitted the present appellants to controvert the claims of validity, and, after argument, determined, upon the issues thus created, the validity of the item of the will

in dispute, and at the same time barred the appellants from participation, for the reason that they violated the provisions of item V.

The action of the appellants was the only way possible to secure a construction of the will, which was the very thing desired by everyone in the litigation. A request for construction in which issues are joined and argument had should not be interpreted as a violation of the conditions against challenge or contest under these circumstances. And this court so determines.

The judgment is affirmed in all respects, except that part which undertakes to bar the appellants from participation; and as to that it is reversed.

*Judgment affirmed in part and reversed in part.*

STEVENS, P. J., and WASHBURN, J., concur.