**R.A.S. ENTERTAINMENT, INC., Appellant,**

**v.**

**CITY OF CLEVELAND, et al., Appellees.**

[Cite as *R.A.S. Entertainment, Inc. v. Cleveland* (1998), 130 Ohio App.3d 125.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72561.

Decided Sept. 28, 1998.

126

*Berkman, Gordon, Murray & Devan, J. Michael Murray, Lorraine R. Baumgardner* and *Steven D. Shafron,* for appellant.

*Sharon Sobol Jordan,* Director of Law, and *Charles E. Hannan, Jr.,* Assistant Director of Law, for appellees.

KARPINSKI, Presiding Judge.

Plaintiff-appellant, R.A.S. Entertainment, Inc., appeals from the trial court's decision to grant summary judgment in favor of defendants-appellees, the city of Cleveland and two of its police detectives. Plaintiff, operating two nightclubs in which nude and seminude performances take place, sought a declaratory judgment that certain dances were constitutionally protected, nonobscene performances. The trial court granted summary judgment in favor of the city and the detectives, and plaintiff appealed. Because plaintiff's complaint does not present a justiciable controversy between the plaintiff and the city, we affirm the judgment of the court below. The relevant facts follow.

Plaintiff operates two businesses, "The Circus" and "The Sideshow," at the same location in Cleveland. At The Circus, plaintiff serves food and beverages, including alcohol, while it provides entertainment, which it describes as "expressive dance performances that do not involve nudity." At The Sideshow, plaintiff presents dance performances that involve nudity, but does not serve alcohol. Plaintiff has presented three videotapes which depict three performances offered at The Circus involving two women. These performances are labeled "The Shower Show," "The Bondage Show," and "Lotion Motion." According to the affidavits submitted along with the tapes, the performances in "The Shower Show" and "The Bondage Show" contained actual oral sex; the "Lotion Motion Show" depicts simulated oral sex.

Plaintiff's complaint alleges that, in the past, the city has filed complaints against plaintiff's employees which charged them with pandering obscenity. All these prior charges were resolved by plea bargains or dismissals.

In requesting declaratory relief, plaintiff sought a declaration that certain dance performances plaintiff wished to present were not obscene. The city and its detectives responded by filing a motion for judgment on the pleadings in which they argued that plaintiff had not identified the specific performances and that there was no justiciable controversy between the parties. Thereafter,

plaintiff produced three videotapes, each depicting a different performance that plaintiff asked to be declared not obscene. These performances were titled "The Lotion Motion Show," "The Bondage Show," and "The Shower Show." The three performances were taped when no patrons were in the bar.

The trial court denied defendants' motion for judgment on the pleadings, but allowed the city to file a motion for summary judgment. Once again arguing that the matter was not ripe for declaratory relief, the city filed a motion for summary judgment and also argued that the videotapes were misleading, sterile examples of the nude performances plaintiff seeks to have declared nonobscene. On the question of justiciability, plaintiff argued that past prosecutions and threats of prosecution have caused some employees to refrain from presenting certain performances. Absent the opportunity of declaratory relief, plaintiff contends that it is left in the position of "risking continued and repeated criminal prosecution of its dancers and employees or forgoing the presentation of constitutionally protected expression."

The trial court granted defendants' motion for summary judgment without opinion. In a timely appeal, plaintiff presents one assignment of error.

"The trial court erred in granting defendants' motion for summary judgment."

Because there were no pending charges against plaintiff or its employees, plaintiff filed a complaint for declaratory relief under the Ohio Declaratory Judgment Act, R.C. 2721.01 *et seq.* The city contends that plaintiff's complaint does not present a justiciable claim for declaratory relief. We agree.

 In order to obtain declaratory relief, plaintiff must establish (1) that a real controversy exists between the parties, (2) that the controversy is justiciable, and (3) that speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261; *Haig v. Ohio State Bd. of Edn.* (1992), 62 Ohio St.3d 507, 584 N.E.2d 704. Inherent in these requirements is the principle that Ohio courts do not render advisory opinions. *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904; *Armco, Inc. v. Pub. Util. Comm.* (1982), 69 Ohio St.2d 401, 23 O.O.3d 361, 433 N.E.2d 923. "A proceeding for a declaratory judgment must be based upon an actual controversy. A proceeding does not lie to obtain a judgment which is merely advisory or which answers a moot or abstract question." *Moskowitz v. Federman* (1943), 72 Ohio App. 149, 164, 27 O.O. 53, 59, 51 N.E.2d 48, 55. Similarly, a declaratory judgment action will not lie to obtain a judgment which is advisory in nature or which is based on an abstract question or a hypothetical statement of facts. *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303

N.E.2d 871; *Cincinnati Metro. Housing Auth. v. Cincinnati Dist. Council No. 51* (1969), 22 Ohio App.2d 39, 51 O.O.2d 45, 257 N.E.2d 410.

For a "controversy" to exist there must be a "genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wagner v. Cleveland* (1988), 62 Ohio App.3d 8, 13, 574 N.E.2d 533, 536, citing *Burger Brewing Co., supra* at 97, 63 O.O.2d at 151, 296 N.E.2d at 264. Similarly, the issue of justiciability involves a question of whether the controversy has the necessary "ripeness" for review. *Id.* at 97, 63 O.O.2d at 151, 296 N.E.2d at 264.

In the case at bar, the trial court granted judgment in favor of defendants before reaching the merits of case. Recently this court has explained the basis for such a decision as follows:

"There are only two reasons for dismissing a complaint for declaratory judgment before the court addresses the merits of the case: (1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may otherwise be lost or impaired; or (2) in accordance with R.C. 2721.07, the declaratory judgment will not terminate the uncertainty or controversy. *Wagner v. Cleveland* (1988), 62 Ohio App.3d 8, 574 N.E.2d 533, citing *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261." *Halley v. Ohio Co.* (1995), 107 Ohio App.3d 518, 524, 669 N.E.2d 70, 74.

In the case at bar, because there was no justiciable controversy between the parties, the trial court did not abuse its discretion in denying declaratory relief. The determination whether an event is obscene or legally protected under the first amendment is a highly content-specific question. What plaintiff sought to validate through a declaratory judgment were future performances based on three examples. The very nature of a live performance, however, makes declaratory relief as to the general legality of the nude dances improper when there is no way of knowing what form those dances would take in the future. A declaration that the "proposed" dances were not obscene, therefore, would not terminate the uncertainty or controversy.

In *F.X. Maltz, Ltd. v. Morgenthau* (C.A.2, 1977), 556 F.2d 123, the Second Circuit Court of Appeals affirmed a dismissal of a declaratory judgment action in which a theater operator sought a similar declaration that certain nude dance performances were protected under the First Amendment. The theater wanted injunctive relief to prevent the police from arresting the dancers. The court stated as follows:

"Moreover, the conduct in which plaintiff proposes to engage may be performed in varying ways from day to day or from performance to performance

presenting difficult issues as to when the dancing may be deemed a 'performance' and when an arrest may be made for an allegedly obscene act without placing a prior restraint on the performance. Absent proof of the specific type and scope of the performance (including gestures) engaged in by the plaintiff, the nature of the choreography and costumes (or lack thereof), including the extent to which such conduct may be changed from day-to-day, the acts alleged to violate the obscenity laws, and the scope of an actual threat of police action, the district court could not, without violating Article III's proscription against 'advisory opinions,' grant relief based upon a fair determination of the difficult and important issues presented." *Id.* at 125-126.

Thus the court made it clear that, because of the varying nature of live performances, a determination of whether the dance is constitutionally protected cannot be based on a prototype dance.

If a prototype were approved, each performance could then be challenged on its deviations. The city has already challenged, for example, the realism of the videotapes in the case at bar. One obvious problem with the tapes is the absence of an audience. Performers respond in varying degrees to an audience. The detectives have testified—and general experience confirms—that the audience at such a performance is highly active. The city points out, for example, that the videotapes do not depict the throng of paying customers eager to reward the performers with monetary donations the customers strategically place in the scant undergarments of the performers. Without an audience, each performance could be, and according to the detectives was, substantially different.

Another deficiency in the videotape is the absence of the disc jockey/commentator. We are advised that normally someone provides comments during the performance over a microphone. Neither side, however, has clarified the extent of the commentator's role. Some commentators might add to the performance a frame that would transform the most innocent of actions. Moreover, the amount of emphasis placed on the sexually provocative aspects of the performances may be decisive in the determination of obscenity. *Ginzburg v. United States* (1966), 383 U.S. 463, 470 86 S.Ct. 942, 947, 16 L.Ed.2d 31.

Also affecting the representation of the performance are the details of the production. Lights, for example, can substantially refocus or intensify an event. An audience, a commentator, lights—these are not insubstantial aspects of a performance.

For the court to rule on a videotape as a kind of prototype stripped of such substantial parts would be misleading, for it would improperly suggest that the possible variations were accidental details and did not affect its substance. The courts have emphasized the importance of the circumstances surrounding a

performance in an obscenity determination. *Ginzburg, supra.* Courts determine what is legal only under the highly specific circumstances of what is before them. It is for good reason that United States courts rule only on actual facts in specific cases. Such an opinion, therefore, would not be useful as a declaratory judgment regarding future performances.

The Sixth Circuit found similar problems in not knowing how a performance—even one presented to the public through a film—will be advertised. In *Adult Video Assn. v. United States Dept. of Justice* (C.A.6, 1995), 71 F.3d 563, the court affirmed the dismissal of a declaratory judgment brought by a trade association seeking a declaration that the adult film "After Midnight" was not legally obscene. Concluding that the plaintiff's claim was not ripe for judicial review, the court explained as follows:

"Second, we also believe the factual record insufficiently developed at this stage in the proceedings to warrant judicial action. Obscenity determinations often require analysis of the *particular factual contexts in which the material at issue is created, promoted, and disseminated.* See *Ginzburg v. United States,* 383 U.S. 463, 470, 86 S.Ct. 942, 947, 16 L.Ed.2d 31 [37–38] (1966) (noting that purveyor's emphasis on the sexually provocative aspects of materials 'may be decisive in determination of obscenity'); *United States v. Battista,* 646 F.2d 237, 244–45 (6th Cir.), cert. denied, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). The facts surrounding Adult Video's promotion and dissemination of 'After Midnight' simply do not exist at this stage in the proceedings. These facts have yet to be developed because, of course, Adult Video has not promoted or disseminated 'After Midnight' in the Western District of Tennessee. Accordingly, it would be impossible to make an accurate obscenity determination as to 'After Midnight' at this time and further factual development is required." (Emphasis added.) *Adult Video Assn.* at 568.

Plaintiff cites other First Amendment cases, however, in which the court found justiciable controversies over the dissemination of films, *Paris Adult Theatre v. Slaton* (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, as well as the placement of yard signs, *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128, 40 O.O.2d 129, 228 N.E.2d 320. These cases are distinguishable from the case at bar. Whereas specific films and yard signs are well defined and cannot be changed, a dance routine is subject to subtle yet significant variations during each performance. A declaratory judgment, therefore, is not the appropriate vehicle for a court to rule on one live event.[1]

Lastly, in response to plaintiff's argument that, in the absence of declaratory relief, plaintiff will be left in the position of risking prosecution or forgoing the

---

1. We note that appellant at oral argument could not cite any cases in which a court made a declaratory judgment on live performances.

presentation of constitutionally protected expression, the Sixth Circuit stated as follows:

"Finally, withholding judicial relief does not result in undue hardship to Adult Video. It would, of course, alleviate Adult Video's concerns regarding the legality of its intended conduct if it obtained a determination as to whether 'After Midnight' is obscene. Without this determination, Adult Video will be forced to weigh the risks and benefits of distributing the film in the Western District of Tennessee with its status as obscene or protected material uncertain. Nonetheless, the caution and uncertainty caused by withholding judicial relief at this time is not an 'undue hardship.' Individuals who choose to conduct their affairs along the boundaries of the criminal law will necessarily incur some risks concerning the legality of their conduct. See *Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir.1987). Any hesitation by Adult Video in distributing 'After Midnight' is an inevitable by-product of the existence of anti-obscenity laws. *Fort Wayne Books, Inc.*, 489 U.S. at 60, 109 S.Ct. at 925 [, 103 L.Ed.2d at 49–50]. The hardship to Adult Video that arises from our withholding relief in this declaratory judgment action arises, not from this Court's inaction but rather from Adult Video's wish to distribute a film bordering on the line between protected First Amendment and obscene material." *Adult Video Assn. supra*, 71 F.3d at 568.

We agree with this perspective. Accordingly, the trial court did not err in granting the city's motion for summary judgment.

*Judgment affirmed.*

SPELLACY and ROCCO, JJ., concur.