JOURNAL ENTRY and OPINION
This is an appeal from an order of Judge Burt W. Griffin granting the motion for summary judgment of appellees City of East Cleveland Civil Service Commission (ECCSC) and Mayor Emmanuel Onunwor (collectively the Commission) on the complaint for declaratory judgment and writ of mandamus of appellant East Cleveland Fire Fighters Local 500, International Association of Fire Fighters (the Union). The Union claimed that the Commission unlawfully certified and promoted Bobby Jenkins to the position of Fire Chief in violation of the City Charter, City ordinance and state statute and sought have the judge order the Commission to remove him from that office and conduct a competitive promotional examination to create an eligibility list from which the Mayor would be required to promote. We affirm that part of the order on the relief in mandamus, reverse that part granting summary judgment for the Commission, and enter judgment for the Union.
The facts are not in dispute. In May 1996, Fire Chief Paul B. Blockson, III, notified the president of the ECCSC that several vacancies had occurred or would shortly occur within certain promoted ranks in the fire department. He asked the ECCSC to begin the process of promotional testing within the department in accordance with City ordinance and commission rules. On June 12, 1996, he provided the Human Resource Director and ECCSC secretary, Wanda Deadwyler, with a list of those fire fighters eligible to take one of the promotional tests, i.e., those fire fighters who had served at least twelve months in the next lower rank from the promoted rank. He followed this June letter with an August 5, 1996 letter to the ECCSC president; he again stressed the importance of beginning the promotional examination process as soon as possible since certain notice requirements and other matters would delay the compilation of a list of persons eligible for promotion until October or November, 1996. Shortly thereafter, Blockson retired, and Deputy Chief LaValle Dorsey was appointed as Acting Fire Chief.
On September 24, 1996, Dorsey forwarded his memorandum to then-Mayor Wallace B. Davis, notifying him of both actual and projected vacancies in the positions of Fire Chief, Deputy Chief, Captain and Lieutenant. He suggested that it would be in the city's best interest to conduct promotional examinations for all of these ranks to promote stability within the department, facilitate scheduling, and maintain the fire inspection and prevention programs. Two days later, he sent a list of candidates eligible to take the promotional examinations by virtue of having served at least one (1) year in the rank immediately below the rank of the position being sought.
For the position of Fire Chief, he named three eligible candidates: himself and Deputy Chief Jerry C. Kirchner, and Robert L. Bearden. For the position of Deputy Chief, he named three eligible candidates: Captain Patrick A. McDonough, Paul A. Lowry, and Bobby R. Jenkins. On January 16, 1997, after Deputy Chief Bearden retired, Dorsey updated the list to include himself and Kirchner as the only candidates eligible to take the Fire Chief examination.
Finally, on April 22, 1997, the ECCSC issued a notice for promotion to the position of Fire Chief, set the date of the examination for June 18 and 19, 1997 and provided a application deadline of April 25, 1997. Kirchner and Dorsey submitted their applications before the filing deadline.
On June 2, 1997, the ECCSC issued notice of the postponement of the Fire Chief promotional examination to Kirchner and Dorsey, indicating that the test was being postponed because of some legal issues that need to be discussed with the City's Law Department. On June 25, 1997, the commission then issued notice of a promotional examination for the ranks of Deputy Chief, Captain, and Lieutenant and set September 13, 1997 for the test.
Apparently Dorsey was removed as Acting Fire Chief and, at some point before the release of the results of the September examinations, Captain Bobby Jenkins was appointed to the position of Acting Fire Chief. On October 30, 1997, the ECCSC, in accordance with Section 123.09(d) of the city administrative code, posted the eligibility lists for the positions of Deputy Chief, Captain, and Lieutenant, identifying Jenkins as the only eligible candidate for Deputy Chief. Jenkins forwarded these lists to Mayor Davis and, six days later, Deadwyler certified the Deputy Chief eligibility list to the mayor.
On November 10, 1997, the ECCSC allegedly held a meeting during which Jenkins asked it to waive the requirement that an individual must serve one year in the rank of Deputy Chief before being eligible to take the Fire Chief's examination. Although the minutes of that meeting are not part of the record, the ECCSC allegedly granted that request.
On November 11, 1997, Jenkins received his official promotion to the position of Deputy Fire Chief. Three days later, the ECCSC issued a second notice of the Fire Chief promotional examination, set the dates of the examination for December 17 and 18, 1997, but retained the previous April 25, 1997, deadline for the filing of applications.
That same day the notice was posted, Kirchner and Dorsey notified Jenkins that they were going to file a grievance against him, the ECCSC, and the city under the collective bargaining contract with regard to the December 1997 Fire Chief promotional test. On November 18, 1997, Jenkins responded to the letter, indicating that the grievance was denied because they had cited no specific violation of any provision of the union contract, statute, or local regulation. On that same date, almost seven months after the posted, April 1997, filing deadline, Jenkins filed his application to take the Fire Chief's examination. On December 7 and 8, respectively, Kirchner and Dorsey withdrew their applications to take the examination.
By letter dated December 10, 1997, Ed Scott, the Union president, asked the ECCSC to notify the Local when it will open the test up [in accordance with state law] to the next lower ranks until you get candidates willing to take the test[.] Nothing in the record reflects that the Commission responded to this request.
On December 16, 1997, the Union and Nathaniel Richardson, a member holding the position of Captain, filed suit against the ECCSC and Mayor Davis and moved to enjoin the Fire Chief promotional examination until the examination was opened to those holding the rank of Captain. On December 17th and 18th, the ECCSC administered the examination to Jenkins only. The hearing on the request for temporary restraining order was reset by stipulation to December 22nd, and the motion was denied on that date.
On December 29, 1997, the ECCSC certified Jenkins for the position of Fire Chief, and Mayor Davis promoted him to that rank the same day.
On October 6, 1998, upon leave granted, the Union filed an amended complaint and requested relief in the form of a writ in mandamus or declaratory judgment. Richardson was dropped as a plaintiff, and Mayor Onunwor, who had replaced Mayor Davis, and the ECCSC were named defendants. The Union averred that when the ECCSC certified Jenkins as eligible to take the Fire Chief examination and certified him as eligible for the promotion, it violated the Ohio Revised Code, the East Cleveland City Charter and ordinances, and ECCSC rules and regulations. It claimed that because there were less than two persons in the rank of Deputy Chief who were eligible and willing to compete in the Fire Chief's examination, statute required that the examination should have been opened to all fire fighters holding the next lower rank (that of Captain) who were eligible and willing to compete. It asserted that, because the mayor illegally promoted Jenkins to the position of Fire Chief, Jenkins must be removed from that position and the ECCSC must conduct a competitive promotional examination allowing participation of all legally eligible fire fighters in the next lower rank who are willing to compete. The Union asked the judge to declare the rights of the parties and require the ECCSC both to remove Jenkins from office and to administer a new Fire Chief examination.
On December 4, 1998, the Union filed a motion for summary judgment, arguing that Jenkins was not eligible to take the Fire Chief promotional examination because his application was submitted beyond the April 25, 1997 deadline and because he had not held the position of Deputy Chief for at least one year. It also asserted that the ECCSC was not in a position to waive the one-year service requirement contained in the city ordinances. In addition, the Union claimed that the ECCSC was required by state law to open the examination to eligible and willing fire fighters in the next lower rank below Deputy Chief because there were less than two individuals, presently classified as Deputy Chief, who were eligible and willing to compete. It argued that, when the ECCSC did not open the examination as required, Jenkins' promotion was illegal.
On December 7, 1998, the Commission filed its motion for summary judgment, arguing that the Union failed to exhaust both its grievance and arbitration remedies under the collective bargaining agreement as well as the administrative remedies afforded to the Union through the ECCSC, itself. The Commission further contended that it had the authority to waive the twelve-month service requirement to allow Jenkins to take the Fire Chief promotional examination.
On November 15, 1999, the judge entered his written opinion and order granting the Commission's motion and denying that of the Union. Because Dorsey and Kirchner, non-parties to the action, had failed to properly file grievances in accordance with the collective bargaining agreement and had failed to exhaust their administrative remedies, he denied the request for the writ of mandamus. He also concluded that the failure to invoke the statutory remedy, i.e., the grievance and arbitration procedure set forth in the collective bargaining agreement, in accordance with R.C. 4117.10(A) precluded declaratory relief.
Because the two assignments of error asserted by the Union present related issues of law and fact, we will address them together:
 I. THE TRIAL COURT ERRED BY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS THE CIVIL SERVICE COMMISSION ACTED IN CONTRAVENTION OF THE REQUIREMENTS OF THE OHIO REVISED CODE AND ITS OWN RULES AND REGULATIONS RELATING TO THE PROMOTION OF FIREFIGHTERS.
 II. THE TRIAL COURT ERRED BY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND HOLDING PLAINITFF [sic] FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS PLAINTIFF HAD NO ADMINISTRATIVE REMEDIES AVAILABLE TO THEM [sic].
The Union argues first that the ECCSC had no authority to postpone the Fire Chief examination, which was scheduled for June 18 and 19, 1997, or to declare Jenkins eligible to take the examination given his probationary status as Deputy Chief. It also complains that because the ECCSC failed to open the examination to eligible fire fighters in the next lower rank below Deputy Chief, given the failure of at least two persons in that rank willing to take the examination, the subsequent promotion of Jenkins to Fire Chief was contrary to statute. The Union contends it has no adequate remedy at law because the issues of promotion and the ECCSC's wrongful acts cannot be arbitrated since they do not involve the terms of the collective bargaining agreement. It claims that it could not administratively appeal the ECCSC's decision to promote Jenkins because the Commission's rules did not provide for such an appeal process.
In response, the Commission counters that it had the authority, pursuant to its own rules, to postpone the June 1997 examination date and waive the twelve-month service requirement as it applied to Jenkins' eligibility to take the exam and that the promotional examinations complied with the appropriate statutes. Finally, the Commission argues, the Union is not entitled to declaratory or mandamus relief because it failed to exhaust both the grievance and arbitration procedure in the collective
 I. IN GENERAL
We review the grant of summary judgment de novo, applying the same standard of review as that applied by the trial judge. Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors (Aug. 3, 2000), Cuyahoga App. Nos. 75804, 75805, unreported, citing Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717. A judge may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. [Id., quoting Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.]
Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. R.C. 2731.01. For a writ of mandamus to issue, this court must find that the City is under a clear legal duty to perform the requested act and that the complainant has a clear legal right to the requested relief. E.g., State ex rel. Caspar v. Dayton (1990),53 Ohio St.3d 16, 18, 558 N.E.2d 49. Courts have a duty in mandamus actions to construe constitutions, charters, and statutes, if necessary, and thereafter evaluate whether the relator has established the required clear legal right and clear legal duty. State ex rel. Fattlar v. Boyle (1998), 83 Ohio St.3d 123, 125, 698 N.E.2d 987 citing State ex rel. Tomino v. Brown (1989), 47 Ohio St.3d 119, 120, 549 N.E.2d 505, 506; State ex rel. Ashbrook v. Brown (1988), 39 Ohio St.3d 115, 117,529 N.E.2d 896, 898. A court must also resolve all doubts concerning the legal interpretation of these provisions. Fattlar, supra, citing, in part, State ex rel. Melvin v. Sweeney (1950), 154 Ohio St. 223, 225-226, 43 Ohio Op. 36, 37, 94 N.E.2d 785, 787.
Even though a relator may establish a clear legal duty and clear legal right to relief, a writ of mandamus will not issue when the relator has a plain and adequate remedy in the ordinary course of law. R.C. 2731.05. In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction. State of Ohio ex rel. Grendell v. Davidson (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704. However, if declaratory judgment would not be a complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction, the availability of declaratory judgment does not preclude a writ of mandamus. State ex rel. Bd. of Commissioners of Mill Creek Metro. Park Dist. v. Tablack (1999), 86 Ohio St.3d 293, 297;714 N.E.2d 917. The relator also must be beneficially interested in the case in order to bring a mandamus action. E.g., State ex rel. Spencer v. East Liverpool Planning Commission(1997), 80 Ohio St.3d 297, 299,685 N.E.2d 1251, citing R.C. 2731.02, State ex rel. Russell v. Ehrnfelt (1993), 67 Ohio St.3d 132, 133, 616 N.E.2d 237.[1]
To obtain relief under the Declaratory Judgment Act, R.C. 2721.01, et seq., a plaintiff must establish the following: (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties. Burger Brewing Co. v. Ohio Liquor Control Comm. (1973), 34 Ohio St.2d 93, 97,296 N.E.2d 261; R.A.S. Entertainment, Inc. v. Cleveland (1998),130 Ohio App.3d 125, 128, 719 N.E.2d 641, appeal not allowed (1999),84 Ohio St.3d 1501, 705 N.E.2d 1242. [C]ourts of record may declare rights, status, and other legal relations[,] subject to specific exceptions,] whether or not further relief is or could be claimed. R.C.2721.02. A judge may dismiss an action for declaratory judgment without addressing the merits of the case under two circumstances: (1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may otherwise be lost or impaired; or (2) in accordance with R.C. 2721.07, the declaratory judgment will not terminate the uncertainty or controversy. Wagner v. Cleveland (1988), 62 Ohio App.3d 8, 574 N.E.2d 533, citing Burger Brewing Co. v. Liquor Control Comm. (1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261." Halley v. Ohio Co. (1995), 107 Ohio App.3d 518,524, 669 N.E.2d 70, 74; accord R.A.S. Entertainment,130 Ohio App.3d at 129. In addition, [t]he doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained. Jones v. Village of Chagrin Falls (1997),77 Ohio St.3d 456, 674 N.E.2d 1388, syllabus.
 II. ADEQUATE REMEDY AT LAW OR EXHAUSTION OF ADMINISTRATIVE REMEDIES
As noted above, the judge did not consider whether the Union established a clear legal right, what that right was, or whether the Commission had a clear duty relative to the Union's right. The judge essentially denied both mandamus and declaratory relief for the reason that the Union had adequate remedies at law and/or failed to exhaust its administrative remedies. After review, we conclude that the terms of the collective bargaining agreement do not apply to promotions within the fire department and that the Commission rules do not apply when a person contests the alleged wrongful promotion of a member of the fire department.
 A. The Collective Bargaining Agreement
R.C. 4117.08 sets forth subjects appropriate for public employees' collective bargaining agreements. While R.C. 4117.08(B) prohibits collective bargaining over all matters concerning pre-hire examinations and the establishment of pre-hire eligibility lists, matters that affect promotions are appropriate subjects for inclusion in collective bargaining agreements. E.g., DeVennish v. Columbus(1991), 57 Ohio St.3d 163,566 N.E.2d 668, paragraphs one and two of the syllabus. Therefore, when the subject of promotions is covered by the Agreement at issue, it is subject to the mandatory grievance procedures which must be exhausted before resort to the courts. Mayfield Heights Fire Fighters Ass'n v. DeJohn(1993), 87 Ohio App.3d 358, 362, 622 N.E.2d 380, referring, in part, to R.C. 4117.10(A).
While the collective bargaining agreement at issue addresses, among other things, matters of discharge, disciplinary actions, and salaries, it does not mention promotions; therefore, the grievance and arbitration procedures provided in Articles XXXIV and XXXV of the agreement do not apply when the Union or its members contest matters relating to promotions. Because the terms of the collective bargaining agreement do not apply, any dispute must then be decided in accordance with R.C.4117.10(A), which provides that when an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. This court must first turn to R.C. 124.40(A), which outlines the power and authority of a municipal civil service commission.
 B. The Commission Rules and City Ordinances
In pertinent part, R.C. 124.40(A) provides:
 Such municipal civil service commission shall prescribe, amend, and enforce rules not inconsistent with this chapter for the classification of positions in the civil service of such city and city school district, and all the positions in the city health district; examinations and resignations therefor; for appointments, promotions, removals, transfers, layoffs, suspensions, reductions, and reinstatements therein; and for standardizing positions and maintaining efficiency therein.[2]
The Supreme Court has previously concluded that the express language in the East Cleveland Charter, Sections 28-31, enables the City to exercise local self-government powers in a manner contrary to state civil service statutes. State ex rel. East Cleveland Association of Firefighters, Local 500, I.A.F.F. v. East Cleveland (1988), 40 Ohio St.3d 222, 224,533 N.E.2d 282. As a result, the city ordinances constitute a proper exercise of such home rule authority and, thus, supersede the provisions of R.C. Chapter 124. Id., citing, in part, Sections 3 and 7, ArticleXVIII of the Ohio Constitution.Section 30 provides for appointments and promotions in the classified civil service to be made according to merit and fitness as ascertained by competitive examination. It further provides that ordinances shall be passed to fix the powers and duties of the Civil Service Commission and to prescribe rules and regulations governing the classified civil service.[3]
In accordance with the City Charter, East Cleveland has enacted Chapter 123 of its Administrative Code, which defines the powers of the Commission and provides the rules for appointment, promotion, suspension, demotion, and removal of members of the classified service, specifically members of police and fire divisions. The provisions of Chapter 123, as enacted by ordinance, also provide for promotional examinations and set forth the qualifications necessary to take such examinations.
Section 123.06(b) allows a promotional position in the classified service to be filled without examination by temporary appointment, but it limits such an appointment to no longer than 180 consecutive days in a calendar year. In pertinent part, Section 123.03(a)[4] provides:
 All appointments and promotions in the classified service of the City shall be made by the Mayor according to merit and fitness, which shall be ascertained by competitive examinations[.] * * * All appointments and promotions shall be for a probationary period of one year, and no appointment or promotion is final until the employee has satisfactorily served his probationary period. * * *
Section 123.08(a)[5] sets the initial eligibility requirement to take a promotional examination: an applicant must have at least one year of service in the rank immediately below the rank for which he is an applicant. Subdivisions (b) through (d) of that section provide for competitive examinations, certain seniority and educational credit in scoring the examinations, and certification of physical health. Section123.09(a)[6] further commands the Commission to hold competitive examinations to establish an eligible list for a position or rank when required by law or at any time in the interest of the public service. An eligible list for original appointment is effective for a period of six months from the date of the list, subject to extension by the ECCSC for a period of no longer than three years. Subdivision (g)(1) further provides that when the mayor provides notice that he intends to fill a position by promotion, the ECCSC shall certify to the Mayor the three persons with the highest grades on the appropriate eligible list[.][7] If the Mayor notifies the Commission that he intends to fill a position by appointment, then the Commission must certify the ten persons with the highest grades on the appropriate eligible list.[8] If fewer than three names appear upon a promotion eligible list, or fewer than ten upon an appointment eligible list, the Commission must certify all names, and the Mayor either may appoint from this list or demand an eligible list.[9]
Review by or appeals to the ECCSC are limited. Section 123.03(a) provides that an employee appointed or promoted in the classified service shall be subject to removal or demotion during the probation period without appeal to the commission other than as stated in the charter. However, when an employee is suspended, demoted, or removed, that employee is entitled to a hearing before the Mayor under Section 123.05. Under Section 123.09(f), a person also has the right to notice and a hearing before the Commission when that person is subject to disqualification and removal from the eligible list. There is nothing within Chapter 123 which allows a person to contest the alleged unlawful promotion of a fire fighter.
The ECCSC rules also provide limited review.[10] Rule 4.12 allows an applicant to seek review by it when the examining staff rejects his application prior to the examination only when the application has been rejected for other than reasons specified in the rule none of which applies here. Rule 6.50, like Section 123.09(g), provides for notice and a hearing when a person who is on an eligible list after an examination is later disqualified. Rule 16 allows any person to file with the ECCSC charges of misconduct or inefficiency against any officer or employee in the police or fire divisions. Like the ordinances above, nothing within the ECCSC rules allows a person to contest the alleged unlawful promotion of a fire fighter. As such, there were no administrative remedies available for the Union to exhaust. See, Jones, supra.
Because the grievance and arbitration procedures contained in the collective bargaining agreement do not apply to complaints regarding another member's promotion and the ECCSC rules provided no administrative remedies to exhaust, the Commission's motion for summary judgment should not have been granted on those bases. This conclusion, however, does not end our review because the question of the parties' legal rights and duties remain.
 III. REQUESTED RELIEF
As noted above, Section 123.03(a) requires the mayor to make all appointments and promotions according to merit and fitness which is ascertained by competitive examinations and all persons who are appointed or promoted to serve a probationary period of one year before the appointment or promotion becomes final. Section 123.08(a) further requires that a promotional examination applicant must have served at least one year in the rank immediately below the rank for which the applicant is testing.[11] Applying the these ordinances to the facts here, in order to be eligible to take the Fire Chief promotional examination, Jenkins would have had to serve in the rank of Deputy Chief for one full year, but he served in that position for three days before filing his application and thirty-five days before taking the promotional examination.
Referring to Rule 17.00, the ECCSC points out that its rules allow it to waive, by majority vote, its own rules regarding time requirements for eligibility. While this may be true, we can find no authority in the City Charter or Chapter 123 of the Administrative Code that supports the proposition that it can waive the application of city ordinances which govern both the conduct of the ECCSC and the initial examination eligibility requirements for promotion of a member of the classified service. Therefore, because Jenkins had not served the requisite one-year term as Deputy Fire Chief, he was not eligible under the express terms of Section 123.08(a) of the Administrative Code to take the Fire Chief examination in December 1997 and, therefore, he was not eligible for certification or subsequent promotion to the rank of Fire Chief.
Although Jenkins was not eligible in 1997 to test for or hold the position of Fire Chief, the judge was not in a position to grant the Union's requests for relief in mandamus to require either the removal of Jenkins or a new examination. While we have determined that Jenkins was not eligible for examination, certification and subsequent promotion, mandamus is not the appropriate writ to remove him from the office of Fire Chief. Quo warranto is the proper means to challenge a public official's right to hold office, and the remedy of ouster can be pronounced in no other proceeding. State ex rel. Stamps v. Automatic Data Processing Bd. of Montgomery County (1989), 42 Ohio St.3d 164, 167,538 N.E.2d 105; see, also, State ex rel. Mazzaro v. Bd. of Edn. of the Euclid City Sch. Dist. (Dec. 27, 1984), Cuyahoga App. No. 49044, unreported.
The Union also did not establish that those holding the position of Captain for a period of one year had a clear legal right to take the December 1997 Fire Chief promotional examination. The Union has claimed that, because there were fewer than two people from the rank of Deputy Chief who were both eligible and willing to take the examination, the ECCSC had a statutory duty under R.C. 124.45[12] to open the examination to those in the next lower rank of Captain. We note that the ECCSC rules do not specifically provide for the situation where no one in the next lower rank is eligible and willing to take the examination for the promoted rank.[13] While the express language of a charter may nullify a state civil service law, express charter authorization is necessary to enable municipalities to adopt ordinances or administrative rules that will prevail over statutory provision in case of conflict. State ex rel. Lightfield v. Village of Indian Hill (1994),69 Ohio St.3d 441, 442, 633 N.E.2d 524, citing State ex rel. Bardo v. Lyndhurst (1988), 37 Ohio St.3d 106, 110, 524 N.E.2d 447. As noted above, Section 30 of the Charter provides only that appointments and promotions in the classified civil service shall be made according to merit and fitness, which is ascertained by competitive examination, and that city council shall provide by ordinance for the enforcement of Section 30. Based upon similar language in the charters addressed in Lightfield and Bardo, one might conclude that R.C. 124.45 is not superseded because the East Cleveland Charter does not contain express language authorizing the adoption of rules regarding the situation where there are no eligible persons in the next lower rank to take a promotional examination, nor do the city ordinances grant the ECCSC rule-making authority. Since there is no conflict with those portions of R.C. 124.45 calling for testing of successively lower ranks, neither the Charter nor the ECCSC rules supersede the provision of R.C. 124.45. This court, however, is bound by the Supreme Court's 1988 ruling that Section 30 of the East Cleveland Charter superseded the provisions of R.C. Chapter 124. See East Cleveland Firefighters, supra. Because R.C. 124.45
is superseded by Section 30, and neither the ordinances nor the administrative rules otherwise allow a member of the ranks other than persons who have served one year in the rank immediately below the promoted rank to take a promotional examination, the ECCSC had no clear legal duty to open the December 1997 Fire Chief promotional examination to those persons who had served one year in the rank of Captain. Since the only persons eligible to take the Fire Chief promotional examination, Dorsey and Kirchner, withdrew their applications, no one was clearly entitled to take the examination and, thus, mandamus would not lie to compel the ECCSC to open the examination to those persons who, during the application period in November 1997, had held the rank of Captain for a period of one year.
We affirm the judgment with regard to the Union's request for relief in mandamus but reverse with regard to action for declaratory judgment and, pursuant to App.R. 12(B), enter judgment in accordance with this Opinion.
It is ordered that the parties hereto share equally in the costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J. CONCUR TERRENCE O'CONNELL, P.J. CONCURS IN PART AND DISSENTS IN PART. (SEE CONCURRING AND DISSENTING OPINION).
[1] We note, however, that the Commission did not challenge the Union's beneficial interest or its standing in the subject matter of this action, and it acceded in its amended answer that a controversy existed regarding the interpretation of the statutes, charter provisions, ordinances, and rules and regulations. Therefore, for the purpose of this action only, we consider waived any objection to standing in the context of either mandamus or declaratory judgment. State ex rel. Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002, referring to Civ.R. 17(A); see, also, State ex rel. Village of Botkins v. Laws (1994), 69 Ohio St.3d 383, 387-388, 632 N.E.2d 897.
[2] This section further provides that the municipal civil service commission shall exercise all other powers and perform all other duties with respect to the civil service of the city as prescribed in Chapter 124 and conferred upon the director of administrative services and the state personnel board of review.
[3] There are no ordinances, however, that grant the ECCSC rule-making authority.
[4] City of East Cleveland Ordinance 7944 (passed Sept., 20, 1988).
[5] City of East Cleveland Ordinance 7616 (passed Dec. 21, 1982).
[6] City of East Cleveland Ordinance 5541 (passed Mar. 12, 1964).
[7] City of East Cleveland Ordinance 17-96 (passed Mar. 19, 1996).
[8] Id. at subdivision (g)(2).
[9] Id., at subdivision (h)(1)-(2).
[10] See supra note 3.
[11] See Rule 5.40, which defines open and promotional competitive examinations. To be eligible to take a promotional examination,
 the employee must have been in paid status for at least 2080 hours in the twenty-four (24) months preceding the test date; meet the minimum requirements listed in the job specification; and meet one (1) of the following conditions:
 1. Have permanent status in a class determined by the Commission to be eligible for the examination; or
 2. Providing that the last test was open competitive, have been provisionally appointed to a position in the class being tested for at least one (1) year prior to the test date; or
 3. Have received a provisional appointment to a position in a class eligible for promotion.
[12] Vacancies in positions above the rank of regular fireman in a fire department shall be filled by competitive promotional examinations, and promotions shall be by successive ranks as provided in this section and sections 124.46 to 124.49 of the Revised Code. Petitions in which such vacancies occur shall be called promoted ranks.
 * * * When a vacancy occurs in a promoted rank, other than the promoted rank immediately above the rank of regular fireman, no person shall be eligible to take the examination unless he has served twelve months in the rank from which the promotion is to be made, provided in those cases where there are less than two persons in such next lower rank who have served twelve months therein and are willing to take the examination the twelve months service requirement shall not apply. If the non-application of the twelve month service requirement to persons in the next lower rank does not produce two persons eligible and willing to compete, then the same method shall be followed by going to successively lower ranks until two or more persons are eligible and willing to compete in an examination for the vacancy. In the event this process of searching successively lower ranks reaches the rank of regular fireman, the twenty-four month service requirement applies, provided in those cases where such application still fails to produce two persons who are eligible and willing to compete, said twenty-four month service requirement does not apply. In the event two persons are unwilling to compete for such examination, then the one person who is willing to compete shall be appointed to fill the vacancy after passing a qualifying examination.
[13] See supra note 3.